**Phillip B. BAILEY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 81–643.**

District of Columbia Court of Appeals.

Submitted June 17, 1982.

Decided July 28, 1982.

Joan Gauche, Washington, D. C., appointed by the court, was on briefs for appellant.

Stanley S. Harris, U. S. Atty., and John A. Terry, John R. Fisher, John Brooks Harrington, and Catherine R. Mack, Asst. U. S. Attys., Washington, D. C., were on brief for appellee.

Before NEWMAN, Chief Judge, and KELLY and MACK, Associate Judges.

KELLY, Associate Judge:

Appellant was convicted by a jury of assault with intent to rape, D.C.Code 1973,

§ 22–501, and sentenced to a term of imprisonment for seven to twenty-one years. He argues on appeal that (1) the trial court erred in allowing the government to impeach him with a prior rape conviction; (2) the manner in which he was impeached was improper because it impermissibly suggested his guilt of the crime with which he was charged; and (3) the evidence was insufficient to support the conviction. We agree that the manner in which the prosecutor impeached appellant was improper under *Fields v. United States*, D.C.App., 396 A.2d 522 (1978), and accordingly, reverse.[1]

I

At appellant's trial on March 19, 1981, the complainant testified that she met appellant for the first time while waiting for a bus on 14th Street, N.W., in Washington, D. C., on Easter Sunday of 1980. She was on her way to pick up her son to take him to church. She and appellant rode the same bus, talked during the trip and made plans to meet later that day at the Takoma Park Metro Station. This meeting never took place.

On April 25, 1980, while waiting for a bus on the corner of 16th and U Streets, N.W., the complainant met appellant again. They talked, and appellant bought her a beer at a nearby liquor store. He asked her for a date for that night. She declined the invitation but gave appellant her home telephone number. Later that evening, appellant called the complainant at home, and she agreed to go out with him.

Appellant picked her up at her apartment, and they took a bus to an Ethiopian restaurant. While on the bus, appellant met a friend, Jerry Skinner, whom he introduced to the complainant.

After dinner, appellant and the complainant decided to go jogging at the Tidal Basin. They took a bus there, but instead of jogging, they sat on a bench and talked past midnight. During the conversation, appellant picked flowers for the complainant and promised to give her a necklace similar to the one he was wearing. When it began to rain, they decided to leave.

They caught a bus at the Bureau of Engraving & Printing. The complainant testified that she thought she was going home. Instead of continuing up 14th Street to transfer at U Street to get to her apartment, however, appellant and the complainant got off the bus at 14th and T Streets because appellant told her he had to pick something up at his apartment. The complainant stated that she believed he was going to pick up the necklace he had promised her earlier in the evening. They walked to a nearby apartment building, and, once in the building, the complainant told appellant that she would wait for him in the lobby.

The complainant testified that after she told him she would wait in the lobby, appellant dragged her down a flight of stairs into the basement of the building. When she wouldn't stop pleading with him to leave her alone, he began to choke her. He pushed her against the wall, pulled her pants down and rubbed his penis against her stomach. He hit her in the face, causing her to fall. Appellant picked her up and continued to push her against the wall. The complainant attempted to reach into her purse, still clutched in her hand, to find something with which to protect herself, but appellant turned around quickly, and the purse flew out of her hand. Appellant moved to pick up the purse, but, as he did this, he removed his hand from her throat. The complainant immediately began to scream, and appellant fled.

After appellant left, the complainant continued to scream for help, but no one came

---

1. As appellant concedes, this court has held that the government can impeach a defendant by naming the specific crime of which he was convicted. *See Hill v. United States*, D.C.App., 434 A.2d 422, 428–29 (1981) (and cases cited therein). Therefore, we find his first contention to be without merit. The final issue raised is equally without merit. Viewed in the light most favorable to the government, the evidence presented clearly was sufficient to support a conviction of assault with intent to rape. *See Higgins v. United States*, 130 U.S.App.D.C. 331, 332, 401 F.2d 396, 397 (1968).

to her aid. She ran out of the basement and into the apartment building, attempting to set off fire alarms. When none of the alarms worked, she ran to a telephone booth across the street from the building and dialed 911 for assistance. The police immediately arrived but were unable to locate the suspect.

Several days later, the complainant, while riding on a bus, met Jerry Skinner and recognized him as appellant's friend. She told him to contact the police, which he did. On May 7, 1980, the complainant made a photographic identification of appellant, and on June 5, 1980, she picked him out of a line-up.

Roger L. Baker, another government witness, lived in a basement apartment in the building where the complainant was allegedly assaulted. He testified that early on April 26, 1980, he was awakened by loud voices in the basement. He went back to sleep and was awakened again, this time by the sound of screaming. He opened his door, which was on the entranceway to the basement, and saw a woman screaming and flowers on the basement floor. He did not assist her; instead, he closed the door and went back into his apartment. Jerry Skinner also testified for the government and corroborated the complainant's testimony about their two Metro bus meetings.

Appellant took the stand in his own defense. He testified that after he and the complainant left the Tidal Basin and got on the bus to go home, he told her that he did not want to take her to her apartment. She got off the bus at 14th and P Streets, N.W., and he continued on to 14th and V Streets. Shortly after getting off the bus, he met Phillip Johnson. After this encounter, he bought cigarettes and went to his apartment, where he found his wife awake.[2]

On cross-examination the prosecutor impeached appellant with his prior conviction for armed rape in the following manner:

[PROSECUTOR]:

Q. Mr. Bailey, isn't it true that you went out with that woman who was not your wife because you wanted some sexual gratification, isn't that true?

A. No, it is not.

Q. And isn't that true that that entire night you talked about that necklace around your throat to eventually get her into a strange place to rape her?

A. No, it is not.

[A pause in the proceedings.]

[PROSECUTOR]:

Q. Just wasn't you at all.

You didn't walk together off the bus over to 1903–15th Street?

A. No, we did not.

Q. You didn't walk into the hallway of that building at all?

A. No, I didn't.

Q. You didn't drag her, lead her down the first flight and drag her into the second flight?

A. No, I didn't.

Q. That didn't happen.

You didn't try to rape her down there, is that right?

A. That's correct.

Q. Are you the same Phillip Bailey who on May 14th, 1971, was convicted in the United States District Court for the District of Columbia of armed rape?

A. Yes, I am.

Subsequently, appellant moved for a mistrial based on the manner in which the prosecutor impeached him with the prior rape conviction. The motion for mistrial was denied. Appellant was convicted and timely noted this appeal.

II

"It is axiomatic that a prior conviction may not be introduced by the prosecution to prove that the defendant is guilty of the crime with which he is charged." *Fields v. United States, supra* at 527. A problem attending the introduction of the

2. Both Phillip Johnson and appellant's wife testified at trial. Each corroborated portions of appellant's testimony.

prior conviction as impeachment evidence is that the jury may be unable to restrict the use of this evidence to its proper purpose but instead may infer from the prior conviction that the defendant is a bad person and therefore probably committed the crime for which he or she is on trial. *Id.* The risk of jury misuse of prior conviction evidence is greatest when the crime charged and the crime used to impeach the defendant are similar. *Id.* to minimize this risk, the prosecutor cannot impeach the defendant with prior convictions in a manner which suggests to the jury that because of his or her prior criminal convictions, the defendant is guilty of the crimes charged. *Id., citing United States v. Henry*, 174 U.S.App.D.C. 88, 528 F.2d 661 (1976); *United States v. Carter*, 157 U.S.App.D.C. 149, 482 F.2d 738 (1973). Appellant, relying on *Fields, supra*, argues that the manner in which the prosecutor impeached him with his prior conviction for armed rape impermissibly suggested to the jury that because he had been convicted of rape before, he was guilty of the assault with intent to rape charge.

In *Fields*, the prosecutor employed the same impeachment tactic used in this case. The defendant, Fields, was charged, *inter alia*, with armed robbery and kidnaping. During the course of his direct testimony, he denied participation in the crimes charged, and denied having a gun in his hand. On cross-examination, the prosecutor asked the defendant if he had a gun in his hand on the night in question. When the defendant answered in the negative, the prosecutor impeached him with his prior

convictions of carrying a pistol without a license and possession of an unregistered firearm. On appeal, Fields asserted that the prosecutor introduced the prior convictions in a manner which suggested to the jury that he was the type of person who carried a gun. This court, adopting the reasoning of *United States v. Henry, supra*,[3] and *United States v. Carter*,[4] agreed with appellant, stating:

> Questions concerning appellant's prior conviction for unregistered possession of a firearm, asked by the prosecutor immediately after appellant had denied possessing a gun on the occasion of the offense charged, likely gave the jury the impression that evidence of appellant's prior conviction was being offered to rebut appellant's denial that he possessed a gun at the time in question. We will not countenance such a highly suggestive and prejudicial sequence of questions, which appeared designed to suggest to the jury that because appellant carried a gun before, he was probably guilty of the crime charged. [*Fields v. United States, supra* at 527–28.]

The court also held that the prosecutor's questions constituted plain error, which could not be cured by cautioning instructions from the trial judge. *Id.* at 528.

The government contends that the instant case is distinguishable from *Fields* on two grounds. First, in this case the prosecutor, after asking appellant if he had attempted to rape complainant, and receiving a negative reply, briefly paused and changed his voice tone before concluding his

**3.** In *Henry*, the defendant was charged with possession of a narcotic drug. During cross-examination, the prosecutor asked Henry if he had supplied cocaine to the complainant, and Henry answered no. The prosecutor then impeached him with a prior conviction for possession of cocaine with intent to distribute. The circuit court held that "the sequence of questions invited the jury to consider the prior convictions as more than evidence relating to the defendant's credibility." *Id.* 174 U.S.App. D.C. at 94, 528 F.2d at 667. Even though the trial court had given cautioning instructions, the court held that the risk of prejudice mandated reversal of the convictions. *Id.* at 95, 528 F.2d at 668.

**4.** In *Carter*, the defendant was charged with robbery. On direct examination, Carter denied the charge. The prosecutor on cross-examination, asked Carter if he had robbed the complainant. When he answered that he would not rob someone, the prosecutor immediately impeached him with prior robbery convictions. The trial court gave two limiting instructions; nevertheless, the circuit court held that the prosecutor's cross-examination constituted reversible error, *United States v. Carter, supra* 157 U.S.App.D.C. at 151, 482 F.2d at 740, and that the limiting instructions did not cure the prejudicial impact of the questions. *Id.* at 151–52, 482 F.2d at 740–41.

cross-examination with the impeaching question concerning appellant's prior rape conviction. The government argues that the pause technique minimized the danger of the jury inferring appellant's guilt simply from his earlier conviction for rape.[5] Second, the government argues that in *Fields*, the trial court gave only a shortened, modified cautionary instruction whereas here, a complete cautionary instruction was given.

We are unpersuaded by the government's attempts to distinguish *Fields* and conclude that *Fields* mandates reversal in this case. It is impossible to determine what effect, if any, the prosecutor's short pause before asking the impeaching question had on the jury.[6] Arguably, the pause served to heighten, rather than to minimize, the prejudicial effect that the impeaching question had on the jury. Because one can never know what impact, if any, the pause will have on the jury, there is no way for the trial court to assess the danger of prejudice to the defendant, as the trial court attempted to do in this case. Since the risk of prejudice is so great when, after the defendant has denied the crime charged, the prosecutor impeaches him or her with a prior conviction for a similar offense, we hold that the impeachment technique which we specifically disallowed in *Fields* does not become permissible merely because the prosecutor pauses before impeaching the defendant with a prior conviction.[7]

The government's second attempt to distinguish *Fields* must fail as well. We held in *Fields* that impermissible questioning of the type engaged in here was error of such magnitude that it could not be cured by an instruction from the court, *i.e.*, is plain error. *Id.* at 528. Accordingly, the fact that the trial court gave cautionary instructions is irrelevant.[8] As the circuit court stated in *United States v. Carter, supra*:

> Even when the prior criminal record is brought into the evidence in an appropriate manner, there is the well-nigh inescapable prejudice on the issue of guilt notwithstanding the trial court carefully instructs the jury as to the limited consideration it may accord the evidence.... When there is the additional prejudice growing out of the introduction of the evidence in an inappropriate manner such as we have here, pointing to present guilt due to the earlier convictions, rather than to present credibility *vel non* of the accused as a witness, the limiting instructions cannot confidently be held to have eliminated the prejudice. It is asking too much of the jury.... [*Id.* 157 U.S.App. D.C. at 151–52, 482 F.2d at 740–41.]

*Reversed.*

---

5. The government made this same argument at the hearing on appellant's motion for mistrial. The trial court agreed with the government and denied the motion.

6. As appellant correctly points out, there is no notation in the transcript of the prosecutor's pause before asking the impeaching question. The fact that he paused was brought out at the hearing on appellant's motion for mistrial. There is no way to know whether a similar pause occurred in *Fields*, nor would such knowledge change our result.

7. We emphasize that the prosecutor's error here was not that he concluded his cross-examination of appellant with the impeaching question; rather, it is that he used the impeachment technique forbidden in *Fields*. The prosecutor asked, "You didn't try to rape her down there, is that right?" When appellant replied no, the prosecutor immediately impeached him with his prior armed rape conviction. It is this juxtaposition of questions which created the danger of prejudice and which mandates reversal in this case.

8. Moreover, we note that, contrary to the government's contention, the trial court gave a complete cautionary instruction after appellant was impeached with the first conviction, and gave a modified instruction after the defendant was impeached a second time. *See id.* at 526–27.