Lawrence M. DORMAN, Appellant,

v.

UNITED STATES, Appellee.

No. 81–1302.

District of Columbia Court of Appeals.

Argued Sept. 30, 1982.
Decided April 22, 1983.

Court of Appeals for the Fourth Circuit ordered a concurrent thirty-day suspension *nunc pro tunc.*

Jo Ann Abramson, Washington, D.C., for appellant.

Katherine Winfree, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., John A. Terry, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, and Mark J. Bennett, Asst. U.S. Atty., Washington, D.C., were on brief, for appellee.

Before KERN and FERREN, Associate Judges, and GALLAGHER, Associate Judge, Retired.

GALLAGHER, Associate Judge, Retired:

■ This is a case where the defendant was caught by several policemen in the act of stealing and was convicted of petit larceny.[1] The principal issue before us is whether there was *plain error* due to questions by the prosecutor of the defendant on cross-examination concerning his prior convictions.[2]

During direct examination of the defendant, his own counsel brought out by questions that appellant had been convicted previously of armed robbery. His counsel then immediately requested the trial judge to give the usual cautionary instruction in relation to the limited use of evidence on prior convictions, and the court then so instructed the jury. On cross-examination, the government took appellant (the defendant) through the theory of his defense in a manner that attacked his credibility. The prosecutor then questioned him on prior convictions, in a manner of which we later relate.

■ The law in this jurisdiction is that "a prior conviction may not be introduced by the prosecution to prove that the defendant is guilty of the crime with which he is charged." *Fields v. United States,* 396 A.2d 522, 527 (D.C.1978). The issue here is whether the government's cross-examination on prior convictions of appellant, under the particular circumstances of this record, resulted in error and, if so, whether it was "plain error." Or, to put it another way, under the circumstances here presented did the cross-examination in question result in plain error, given the reality that introduction of prior convictions is to a degree inherently prejudicial to a defendant but is nevertheless statutorily authorized in this jurisdiction? (D.C.Code § 14–305(b) (1981)).

It is evident that in resolving this issue one must initially deal with our decision in *Fields v. United States, supra,* 396 A.2d at 522. There the pertinent part of the record as related in our decision was this:

Q. Now, Mr. Fields, you had a gun with you that night, didn't you?

A. No, sir.

---

1. D.C.Code § 22–2202 (1981).

2. Appellant also contends there was error due to the trial court's failure to give requested jury instructions on abandonment or loss of allegedly stolen property. The trial court acted within its discretion in declining to give the requested instruction. Not only did the proposed instruc-tion not meet the usual test of being fairly raised by the evidence, but as the court stated, the instruction would have been redundant as the jury was instructed it could not convict unless it found appellant had the specific intent to steal the radio. We conclude there is no error.

Q. Are you the same Jesse Fields that was convicted in 1969 of carrying a pistol without a license?

A. I'm the Jesse Fields that pleaded guilty to that charge.

Q. Well, did you plead guilty because you were guilty?

A. Yes, sir.

Shortly thereafter, the trial court instructed the jury on the limited purpose for which the prior convictions should be considered. The prosecutor then resumed his cross-examination, returning to the same point several minutes later.

Q. Did you have a gun with you that night?

A. No.

Q. Are you the same Jesse Fields that was convicted of unregistered possession of a firearm?

A. I'm the same Jesse Fields that stepped forward and pled guilty.

THE COURT: I instruct the jury the mere fact this defendant was convicted of that offense is not to be taken as guilt in any way of the offense. It only bears on his credibility as a witness.

BY [THE PROSECUTOR]:

Q. Was that in 1975 that you were convicted of that second weapons offense?

A. Yes, sir, I think it was. I think it was the same year.

The prosecutor then proceeded to introduce evidence of several other convictions. At no point did defense counsel object to the manner in which the prosecutor used the prior convictions to impeach appellant.

*Id.* at 526–27.

In view of the sequence of the questions in that case, this court reversed. We did so because we concluded that this cross-examination fell into the error found to exist in *United States v. Henry,* 174 U.S.App.D.C. 88, 528 F.2d 661 (1976) and *United States v. Carter,* 157 U.S.App.D.C. 149, 482 F.2d 738

(1973). More specifically, we concluded in *Fields* that the government's questioning was "designed to suggest to the jury that because appellant carried a gun before, he was probably guilty of the crime charged." *Fields v. United States, supra,* 396 A.2d at 528. This conclusion stemmed from the sequence and the manner of the questioning.

By this we mean, the prosecution first asked the defendant if he had a gun on him the night of the incident and, upon receiving a denial of the gun possession, the prosecutor next introduced his prior conviction of carrying a gun without a license. After the trial judge then gave the customary cautionary instruction, the prosecutor soon came back to the same point, asking the very same initial question:

Q. Did you have a gun with you that night?

A. No.

Q. Are you the same Jesse Fields that was convicted of unregistered possession of a firearm?

*Id.* at 526.

It was apparent that the prosecutor in *Fields* had committed the error identified in *Carter* and *Henry.* He was affirmatively and deliberately using prior convictions for the forbidden purpose, i.e., as evidence of guilt of the crime charged.

Turning back to this case, we view the circumstances of record as requiring a different conclusion. During direct-examination of appellant, his own attorney introduced the fact of his prior conviction for armed robbery, presumably as a tactical matter for the purpose of "pulling the teeth" in advance of the government's later introduction of prior convictions during cross-examination.[3] Be that as it may, it was appellant himself who injected into the trial his prior armed robbery conviction.

The gist of the government's evidence was that appellant was seen by police officers taking a radio from the side of an

---

**3.** This is sometimes done by defense counsel as a matter of trial tactics. It is commonly referred to as "pulling the teeth" of the govern-

ment in relation to a defendant's prior conviction of crime.

ostensibly sleeping man on a sidewalk, who in actuality was a police sergeant dressed in old clothes. The defense was that appellant did not take the radio and was arrested for no reason at all. The government's cross-examination consisted of an attack on his credibility through questions designed to bring out appellant's version that it was he, and not the police officers, who was telling the truth regarding his arrest. Having concluded a series of questions on the credibility issue of the trial, the government asked him the following:

Q. Now Mr. Dorman, are you the same Lawrence Dorman that on December 21, 1973, was convicted of first-degree burglary?

A. Yes, sir.

Q. And are you the same Lawrence Dorman that on the same date was convicted of attempted larceny?

A. Yes, sir.

Q. Are you the same Lawrence Dorman that on March 22, 1974, was convicted of assault with a deadly weapon, a gun?

A. Yes, sir.

Q. And are you the same Lawrence Dorman that on November 9, 1971, was convicted of carrying a dangerous weapon, a gun?

A. Yes, sir.

MR. BENNETT: I have no further questions, Your Honor.

Taking appellant on re-direct examination, *his own counsel pursued his prior convictions further* and asked him these questions:

Q. In addition to the offense which I mentioned, the United States Attorney has mentioned other offenses and they're yours, are they not?

A. Yes, sir.

Q. And you have been appropriately punished for those, have you not?

A. Yes, sir.

MR. BENNETT: Objection, Your Honor.

After a colloquy, the court repeated a cautionary instruction and stated:

THE COURT: You may step down.

Ladies and gentlemen, I caution you again, so that the thought will be in your mind at this time and at any other time that the matter is fresh, that as to prior convictions, that type of evidence comes in for one purpose and one purpose only, and that is to be—as a factor which may integrate into your decision on whether or not the defendant should be believed. It is not to be considered by you as evidence which in and of itself persuades you that the defendant is guilty or not guilty of the offense, but only in the process—your mental process of ultimately deciding whether or not you should believe the defendant.

Is there anything additional to that instruction request?

DEFENSE COUNSEL: No, Your Honor.

No issue was made by appellant at trial on the introduction of his prior convictions. Not only that, first on direct and again on re-direct examination counsel for appellant actually engaged in the examination of appellant on his prior convictions as a trial tactic. Consequently, he not only failed to move for a mistrial, he joined in the pursuit of prior convictions. The question we now have is whether there was plain error.

Viewing the circumstances in this case in the light of the plain error rule, it is apparent that it is not present. In assessing for plain error we look to all the circumstances of the case to determine whether there is a probability that there has been a miscarriage of justice. *Bundy v. United States,* 422 A.2d 765, 768 (D.C.1980). There is here certainly no error "so clearly prejudicial to substantive rights as to jeopardize the very fairness and integrity of the trial," *Watts v. United States,* 362 A.2d 706, 709 (en banc) (D.C.1976); and surely there is on the record in this case, where appellant was caught in the act, no error which is "obvious, affect[s] the substantial rights of the accused and if uncorrected would be an affront to the integrity and reputation of judicial proceedings." *Harling v. United States,* 382 A.2d 845 (D.C.1978).

What happened was that the prosecutor briefly cross-examined appellant in purely a credibility context and at the conclusion of this brought out on the record his prior convictions to end his credibility attack on appellant and complete his cross-examination, as permitted by statute in this jurisdiction. This accords with the frequent practice of prosecutors in the matter of prior convictions. Such prejudice to appellant as resulted was that prejudice which is inherent in exposing prior convictions. There was not here, as there was in *Fields, Henry* and *Carter,* an attempt by the prosecutor to prove affirmatively by the use of prior convictions that appellant was guilty of the offense charged. Rather, not only was there not plain error in this case, but there was a permissible use of prior convictions as authorized by law.[4] As a matter of fact,

4. Because our recent decision in *Bailey v. United States,* 447 A.2d 779 (D.C.1982), reached a different result, it might be well to relate the circumstances of that case. There the able and experienced trial judge, after permitting extensive oral argument on the point, concluded that due to the affirmative efforts of the prosecutor by interspersing a substantial pause (accompanied by a change of voice) between his cross-examination on the facts and his concluding inquiry on prior convictions he would not grant the motion for mistrial. There was a searching inquiry by Judge Morrison. His reasoned effort is demonstrated by this passage from the record of the trial court:

THE COURT: Counsel, on the question of Miss Gauche's motion for mistrial I have thought about it over the noon hour and I have determined that I'm going to deny the request for a mistrial.

In a case such as this there is no question but what the potential for misuse of a criminal conviction is powerful. However, I think Mr. Harrington's utilization of this conviction is different than that presented by the Fields case. The main thrust of Mr. Harrington's cross-examination was to put at issue the credibility of Mr. Bailey, to argue to the jury the incongruity of his denial that he was with the complaining witness at the time that in the government's view an assault with intent to rape took place. The questions leading up to the impeachment under 14–305 are consistent with the general theme, as I read it, of Mr. Harrington's cross-examination. There is indeed mentioned a couple of places near the end of questions like isn't that true that the entire night you talked to her about that necklace around your throat to eventually get her into a strange place to rape her. There are questions like that. It does not appear to me that the prosecution, viewing the closing argument [sic] in its entirety, timed the impeachment under 14–305 so as to heighten the possibility that the jury would misuse the impeachment.

It is not clear to me when in the context of a normal cross-examination in a case such as this, and I believe Mr. Harrington's was a normal cross-examination, it is not clear to me when prejudice could best be minimized by utilizing such a conviction. Mr. Bailey's credibility was not at issue until Mr. Harrington put it at issue before the jury in his—it was not graphically at issue till he put it at issue in the content of his closing argument [sic]. I think it would be more prejudicial to Mr. Bailey to commence cross-examination with impeachment because at that point the foundation for challenging the credibility of the defendant is not even at issue. It is critical in this case in my judgment that Mr. —much of Mr. Harrington's closing argument or I mean cross-examination was conducted with raised tones [of] voice, that prior to his impeachment there was a pause which, though Miss Gauche disagrees with me, I think lessened rather than heightened the potential for prejudice. And then in an even tone with no drama Mr. Harrington asked the 14–305 impeachment question. I believe that this case is distinguishable from the situation presented in Fields, although the issue is not without difficulty and therefore I'm going to deny your motion for mistrial.

*United States v. Bailey,* No. F–2782–80 (D.C. Super.Ct.).

This court reversed stating:

We are unpersuaded by the government's attempts to distinguish *Fields* and conclude that *Fields* mandates reversal in this case. It is impossible to determine what effect, if any, the prosecutor's short pause before asking the impeaching question had on the jury. Arguably, the pause served to heighten, rather than to minimize, the prejudicial effect that the impeaching question had on the jury. Because one can never know what impact, if any, the pause will have on the jury, *there is no way for the trial court to assess the danger of prejudice to the defendant as the trial court attempted to do in this case.* Since the risk of prejudice is so great when, after the defendant has denied the crime charged, the prosecutor impeaches him or her with a prior conviction for a similar offense, we hold that the impeachment technique which we specifically disallowed in *Fields* does not become permissible merely because the prosecutor pauses before impeaching the defendant with a prior conviction. [Emphasis added; footnotes omitted.]

defense counsel deliberately initiated and later joined in the government's questioning of appellant on his prior conviction as a matter of trial tactics.

We see nothing resembling plain error, in the proper usage of that term.

*Affirmed.*

FERREN, Associate Judge, dissenting:

I respectfully dissent because of the majority's refusal to follow four earlier decisions binding this division of the court, including two from this court holding there was "plain error" in similar circumstances.

On direct examination, defense counsel brought out the fact that appellant had pleaded guilty to armed robbery in 1973. Counsel asked for and received a cautionary instruction from the trial court. On cross-examination, the following exchange took place:

Q. Mr. Dorman, you are saying when Officer Green said he saw you go up to Sergeant Hickey on the steps, he is not telling the truth, is that right?

A. Yes, sir.

MR. BECKER: Objection.

THE COURT: No, I'll permit that question.

BY MR. BENNETT:

Q. Is that correct?

A. Yes, sir.

Q. And when Officer Green said that he saw you take that radio from Sergeant Hickey, he was again not telling you the truth, is that correct?

A. Yes, sir.

Q. And when Officer Green said that he saw you walk away with that radio, he was again not telling the truth?

A. Yes, sir.

Q. And that when he said that you got 90 feet from Sergeant Hickey he was again not telling the truth?

A. Yes, sir.

Q. So essentially his entire testimony was just not true, is that right?

A. Yes, sir.

Q. And when Sergeant Hickey said that he saw you ten feet from him holding the radio, again, he was not telling the truth either, was he?

A. Yes, sir.

Q. He wasn't?

A. Right.

Q. *So you never touched the radio, is that right?*

A. *Yes, sir.*

Q. *You just walked up to it, looked at it, walked down two steps and you weren't even touching it and all of these policemen arrested you for no reason at all, is that correct?*

A. *Yes, sir.*

Q. Now Mr. Dorman, are you the same Lawrence Dorman that on December 21, 1973 was convicted of first degree burglary?

A. Yes, sir.

Q. And are you the same Lawrence Dorman that on the same date was convicted of attempted larceny?

A. Yes, sir.

Q. And are you the same Lawrence Dorman that on March 22, 1974, was convicted of assault with a deadly weapon, a gun?

A. Yes, sir.

Q. And are you the same Lawrence Dorman that on November 9th, 1971, was convicted of carrying a dangerous weapon, a gun?

A. Yes, sir.

MR. BENNETT: I have no further questions, Your Honor.

Prior criminal convictions are admissible to impeach a witness, including a criminal defendant who chooses to testify. D.C.Code § 14–305(b) (1981). They are, of course, inadmissible to show a general criminal disposition. *Ward v. United States,* 386 A.2d

---

*Bailey v. United States, supra,* 447 A.2d at 783. We read the facts in this particular case differently in pertinent part and, in so doing, we come to a different conclusion than reached by this court in *Bailey v. United States, supra,* as we do not consider it binding here.

1180, 1182 (D.C.1978). Whenever a criminal defendant is impeached by prior convictions, there is a risk that the jury, despite a cautionary instruction, will be unable to limit their use to the purpose the law allows. Rather than draw the only permissible inference—that a one-time thief is likely to lie—the jury may draw the impermissible inference that a one-time thief is likely to steal again, and therefore did. However, as we noted in *Hill v. United States,* 434 A.2d 422, 429 (D.C.1981), *cert. denied,* 454 U.S. 1151, 102 S.Ct. 1020, 71 L.Ed.2d 307 (1982):

> We are aware of the debate among courts and within academia about the wisdom of informing juries of a defendant's prior convictions when a defendant takes the stand, given the possibility that even with a cautionary instruction the jurors may not confine their consideration of the prior convictions to the question of credibility. Nonetheless, the issue comes down to one of policy, and the Congress had left no doubt that in this jurisdiction, our policy is that when a defendant takes the stand the court must permit the prosecution to attack his or her credibility by introducing recent prior convictions for felonies and other crimes involving dishonesty or false statement.

In carrying out congressional policy, the courts have a responsibility to try to minimize the danger that the jury will draw the forbidden inference of criminal propensity. Thus, the court should not permit the phrasing or the timing of the prosecutor's questions to suggest to the jury that the prior convictions may be used for purposes other than assessing credibility. Accordingly, we twice have held, as has the United States Court of Appeals for the District of Columbia Circuit, that the prosecution may not ask a defendant whether he or she denies committing the charged offense and then, after eliciting a denial, immediately bring in the prior convictions. *Bailey v. United States,* 447 A.2d 779 (D.C.1982) (plain error); *Fields v. United States,* 396 A.2d 522 (D.C.1978) (plain error); *United*

*States v. Henry,* 174 U.S.App.D.C. 88, 528 F.2d 661 (1976); *United States v. Carter,* 157 U.S.App.D.C. 149, 482 F.2d 738 (1973).

The government argues, and the majority agrees, that the present case is distinguishable from *Bailey, Fields, Henry,* and *Carter* because the two offending questions (italicized above) immediately preceding the impeachment with prior convictions were themselves preceded by—and should be read in the context of—a series of questions (characterized by my colleagues as "rather brief") in which appellant "placed his credibility as opposed to that of the officers . . . directly at issue." I disagree with that attempted distinction. This prosecutorial approach cannot be justified by constructing a rule whereby an otherwise improper sequence is cleansed if preceded by one or two or ten questions about credibility. I conclude that the questions "So you never touched the radio . . . ?" and "You just walked up to it . . . and all of these policemen arrested you for no reason at all, . . . ?" —which the prosecutor asked immediately before the impeachment by prior convictions—"invited the jury to consider the prior convictions as more than evidence relating to the defendant's credibility." *Henry, supra,* 174 U.S.App.D.C. at 94, 528 F.2d at 667.

The government is free to introduce prior convictions, with an appropriate limiting instruction, after the completion of cross-examination (assuming, of course, that the impeachment is immediately preceded by a suitable break,[1] from the type of questions complained of here), or in the midst of cross-examination after a series of questions dealing solely with the defendant's credibility. Impeachment would have been proper here, for example, if the two offending questions had been left out.

It is asking too much of a jury to permit the government to juxtapose the defendant's denial of present criminal involvement with questions and proof concerning prior criminal involvement, and then to attempt

---

1. *Compare Bailey, supra,* 447 A.2d at 782 (brief      pause and change of voice tone insufficient).

to prevent, through a cautionary instruction, the very inference that the mixture of evidence suggests should be drawn.[2]

**2.** That appellant failed to object to the sequence of questions at trial should not affect our decision. The error could not have been cured by the trial court, and "it would make no sense for us to weigh against appellant his failure to object below, under circumstances in which timely objection could not correct the harm done." *Fields, supra,* 396 A.2d at 528.