**Alvin BAPTIST, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 82–887.**

District of Columbia Court of Appeals.

Submitted Jan. 13, 1983.

Decided Sept. 9, 1983.

---

Narasimha Swamy, Washington, D.C., appointed by this court, for appellant.

Robert K. Reed, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., and Michael W. Farrell, Judith Hetherton and Wallace H. Kleindienst, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before KERN and BELSON, Associate Judges, and REILLY, Chief Judge, Retired.

BELSON, Associate Judge:

Appellant was convicted by a jury of one count of attempted burglary in the second degree under D.C.Code §§ 22–103, –1801(b) (1981) and one count of attempted petit larceny under D.C.Code §§ 22–103, –2202 (1981). He contends on this appeal that the manner in which the prosecutor used three prior convictions to impeach appellant on cross-examination impermissibly suggested appellant's guilt of the crimes with which he was charged; that the trial court erroneously instructed the jury, and in effect directed a verdict, when it stated that it was the jury's "duty to find appellant guilty" if it found that the government had proven every element of the charged offenses; that the trial court erroneously instructed the jury that "reasonable doubt" was "doubt based on reason" or "an abiding conviction of the defendant's guilt," and that the evidence was insufficient to sup-

port the convictions. We conclude that the prosecutor's impeachment of appellant was permissible. We find appellant's other contentions of error unpersuasive and, accordingly, affirm.

## I

On January 15, 1981, at approximately 2:00 a.m., two special police officers and veteran Conrail employees, Ronald McCabe and William Keeley, were on duty at the Conrail railroad yard located in southeast Washington. Having just completed their final security patrol, both officers observed a man, later identified as appellant, enter the Conrail yard from the north end. After the two officers assumed different surveillance positions, Officer McCabe saw appellant walk over to a freight car, heard him break its lock (or seal), and saw him peer inside. Appellant subsequently broke the locks of and peered inside two other freight cars. He eventually broke the lock of a fourth freight car and climbed inside it. This car contained one foot square boxes of canned foodstuffs.

During appellant's activities, Officers McCabe and Keeley were in constant radio contact and received back-up help from two Metropolitan Police Department officers. Approximately fifteen minutes after appellant entered the fourth freight car, Officer McCabe quietly approached it, heard boxes being shuffled inside, and quickly closed and locked the door. Officers McCabe and Keeley and the two Metropolitan Police Officers then gathered outside the door. Officer McCabe then notified appellant that he was under arrest and opened the freight car door. Appellant jumped to the ground and began to flee. Officer McCabe apprehended appellant after a short chase. Upon searching appellant, the police discovered pliers and a pair of wire cutters.

At trial on direct examination, appellant explained that his car broke down near the Conrail yard and that he used the pliers and wire cutters in an unsuccessful attempt to fix his battery. He maintained that he entered the Conrail yard merely to use it as a shortcut home. He admitted that he entered the freight car in question to "check out" the contents of the boxes, but denied that he had any intent to steal the boxes or commit any other crime in the car. He testified that he fled when the police opened the freight car door because he then remembered that his wife had asked him to babysit for their children and he was worried that the children were alone.

During cross-examination of appellant, the prosecutor, on three separate occasions, used one or another of appellant's three prior convictions to impeach appellant. At the outset of his cross-examination the prosecutor without objection impeached appellant with a 1975 conviction for larceny. This was followed by the trial court's cautionary instruction on the limited admissibility of appellant's prior convictions.

The prosecutor then began questioning appellant concerning his car's breakdown, his possession of the pliers and wire cutters, and his discovery of the hole in Conrail's fence. Appellant was then impeached with a 1975 attempted robbery conviction. The court overruled appellant's objection.

Continuing the cross-examination, the prosecutor asked appellant whether he had intended to steal the contents of the freight cars. Appellant denied such intent. The prosecutor then asked questions about appellant's awareness that boxcars sometimes contain valuable cargo, his familiarity with the train yard, and his reaction upon finding only large rolls of paper in the first three boxcars. After appellant responded that he had not been trying to steal anything from the car he was found in, government counsel asked him to explain why four boxes were stacked near the door. Appellant denied that he had stacked four boxes near the door, but asserted that he had picked up one box and turned it around to see what it was. The prosecutor then concluded his examination by impeaching appellant with a 1980 conviction for attempted petit larceny. The court again overruled appellant's objection and provided an immediate cautionary instruction on the use of

evidence of prior convictions for impeachment purposes.

## II

In this jurisdiction, the applicable statute authorizes impeachment of the credibility of a defendant or any other witness by evidence that he has been convicted of a felony or certain other criminal offenses. The Congress in D.C.Code § 14–305 (1981) adopted the policy of permitting wide use of previous convictions as "obviously highly probative evidence of a witness' credibility." [1]

Recently, in *Hill v. United States,* 434 A.2d 422, 429 (D.C.), *cert. denied,* 454 U.S. 1151, 102 S.Ct. 1020, 71 L.Ed.2d 307 (1981), we noted our awareness of the debate concerning the wisdom of informing juries of a defendant's prior convictions where defendant is a witness, given the possibility that even with a cautionary instruction the jurors may not confine their consideration to the prior convictions to the question of credibility. We went on to say:

> Nonetheless, the issue comes down to one of policy, and the Congress had left no doubt that in this jurisdiction, our policy is that when a defendant takes the stand the court must permit the prosecution to attack his or her credibility by introducing recent prior convictions for felonies and other crimes involving dishonesty or false statement.

The case before us is the latest in a series of appeals which raise the question of how far the courts can go in placing limitations upon the manner in which the government makes use of such impeachment without thwarting the policy the Congress expressed. It was in *Fields v. United States,* 396 A.2d 522 (D.C.1978), that this court first imposed a limitation upon the manner in which the government may use prior convictions, the use of which was expressly authorized under the statute. There we dealt with what we termed a "highly suggestive and prejudicial sequence of questions." *Id.* at 528. Fields was charged, *inter alia,* with carrying a pistol without a license, assault with a dangerous weapon, armed robbery, and armed kidnapping. In our opinion we recounted the cross-examination of *Fields.*

The prosecutor opened his cross-examination as follows:

Q. Now, Mr. Fields, you had a gun with you that night; didn't you?

A. No, sir.

Q. Are you the same Jesse Fields that was convicted in 1969 of carrying a pistol without a license?

A. I'm the Jesse Fields that pleaded guilty to that charge.

Q. Well, did you plead guilty because you were guilty?

A. Yes, sir.

Shortly thereafter, the trial court instructed the jury on the limited purpose for which the prior convictions should be considered. The prosecutor then resumed his cross-examination, returning to the same point several minutes later.

Q. Did you have a gun with you that night?

A. No.

Q. Are you the same Jesse Fields that was convicted of unregistered possession of a firearm?

A. I'm the same Jesse Fields that stepped forward and pled guilty.

THE COURT: I instruct the jury the mere fact this defendant was convicted of that offense is not to be taken as guilt in any way of this offense. It only bears on his credibility as a witness.

BY [THE PROSECUTOR]:

Q. Was that in 1975 that you were convicted of that second weapons offense?

1. H.R.Rep. No. 907, 91st Cong., 2d Sess. 62–63 (1970), *reprinted in* [1970] D.C.Code Legis. & Ad.Serv. 398, 458–59. We upheld the constitutionality of § 14–305 in *Dixon v. United States,* 287 A.2d 89 (D.C.1972).

A. Yes, sir, I think it was. I think it was the same year [as the charges being tried].

*Id.* at 526–27.

Thus the prosecutor in *Fields* engaged in a sequence of fact question and impeachment in which he followed the defendant's denials of the key element of a charged offense by a question relating to a previous conviction for the same offense. We reversed the conviction.[2]

We dealt with prohibited conviction impeachment once more in *Bailey v. United States,* 447 A.2d 779 (D.C.1982). In *Bailey* there had been no repetitious sequence as there had been in *Fields.* The challenge was to a single question, the last one asked in cross-examination. Bailey was on trial for assault with intent to commit rape. In the second to last question of his cross-examination, the prosecutor had asked, "You didn't try to rape her down there, is that right?" The defendant replied "That's correct." *Id.* at 781. The prosecutor concluded his cross-examination with a final question which related to an earlier conviction for rape. We reversed.

One basis on which the government attempted in *Bailey* to distinguish *Fields* was that after receiving the immediately preceding answer, the prosecutor briefly paused and changed his tone of voice. Our opinion stated:

> Since the risk of prejudice is so great when, after the defendant has denied the crime charged, the prosecutor impeaches him or her with a prior conviction for a similar offense, we hold that the impeachment technique which we specifically disallowed in *Fields* does not become permissible merely because the prosecu-

tor pauses before impeaching the defendant with the prior conviction.

*Id.* at 783 (footnote omitted).

Very recently, in *Dorman v. United States,* 460 A.2d 986 (D.C.1983), *petition for rehearing en banc pending,* this court was again called upon to decide whether a prosecutor's use of a prior conviction for impeachment was improper. There we held the prosecutor's manner of questioning did not amount to plain error. In *Dorman* the prosecutor had asked defendant a series of questions which dealt with credibility in the sense that defendant was asked whether certain police officers had not been telling the truth when they testified to certain facts indicative of Dorman's guilt of the charged offense of petit larceny of a radio. This sequence of questions followed directly:

> Q. So, you never touched the radio, is that right?
>
> A. Yes, sir.
>
> Q. You just walked up to it, looked at it, walked down two steps and you weren't even touching it and all of these policemen arrested you for no reason at all, is that correct?
>
> A. Yes, sir.
>
> Q. Now Mr. Dorman, are you the same Lawrence Dorman that on December 21, 1973 was convicted of first degree burglary?
>
> A. Yes, sir.
>
> Q. And are you the same Lawrence Dorman that on the same date was convicted of attempted larceny?
>
> A. Yes, sir.

There followed two additional questions concerning convictions for assault with a deadly weapon and carrying a dangerous

---

**2.** We cited with approval two cases from the United States Court of Appeals for the District of Columbia Circuit: *United States v. Carter,* 157 U.S.App.D.C. 149, 482 F.2d 738 (1973), where the court reversed a robbery conviction because, during the cross-examination of the defendant, the prosecutor first asked Carter *whether he had robbed* the victim and, immediately after his denial, impeached him with his prior conviction of six counts of robbery and

assault with a dangerous weapon. A similar result occurred in *United States v. Henry,* 174 U.S.App.D.C. 88, 528 F.2d 661 (1976), where the prosecutor, in examining defendant, who was charged with various narcotics offenses, inquired whether he had supplied the codefendant with cocaine and, immediately following his denial, impeached Henry with a prior conviction for possession of cocaine with intent to distribute.

weapon, gun. *Id.* at 991 (Ferren, J., dissenting).

The division majority held that "[s]uch prejudice to appellant as resulted was that prejudice which is inherent in exposing prior convictions," explaining that what had happened was that the prosecutor had "briefly cross-examined appellant in purely a credibility context and at the conclusion of this brought out on the record his prior convictions to end his credibility attack on appellant and complete his cross-examination . . . ." *Id.* at 990. The majority also took note of the fact that defense counsel had questioned defendant about previous convictions on direct examination as a matter of trial tactics, and then took the matter up again on redirect examination. The majority concluded that the government's use of previous convictions was permissible, and was neither plain error nor error at all.

### III

Given the holdings in *Fields, Bailey,* and *Dorman,* it is fair to observe that it has become somewhat difficult for the participants in a criminal trial to determine, with a high degree of confidence, just when it is that a prosecutor may impeach a defendant with a previous conviction. Quite often, the greatest part of the prosecutor's cross-examination of a defendant will deal with the alleged commission of the offense or offenses charged. When questioning in that broad area, however, the prosecutor must seek to elicit testimony which is relevant and material to whether the defendant committed the elements of the offense. To follow defendant's answer with a question concerning a previous conviction for a similar offense can give rise to an assertion that the prior conviction is being misused.

In some instances, the prosecutor may be in a position to ask questions not dealing with the elements that bear on the credibility of the defendant, and follow them with questions about previous convictions. However, like the sequence of questions in *Dorman, supra,* questions which can be said to relate to the credibility of the defendant will often relate as well to elements of the offense charged.

Indeed, the expression of what might be termed a restrictive view as to previous conviction impeachment which was set forth in the dissent in *Dorman* illustrates well the potential for virtually nullifying § 14–305 which the development of this line of cases could present. Explaining why Dorman's conviction should have been reversed by reason of improper use of previous convictions, the dissent stated:

> The government is free to introduce prior convictions, with an appropriate limiting instruction, after the completion of cross-examination (assuming of course, that the impeachment is immediately preceded by a suitable break, from the type of questions complained of here), or in the midst of cross-examination after a series of questions dealing solely with the defendant's credibility. Impeachment would have been proper here, for example, if the two offending questions had been left out.

*Id.* at 992 (Ferren, J., dissenting) (footnote omitted).[3] Thus the approach of the dissent in *Dorman* would appear by implication to rule out any use of impeaching questions after the defendant had responded to cross-examination dealing with the facts of the case, unless there had been a "suitable break" between the previous questions and the impeachment.

---

**3.** It is noted that if the two offending questions had been left out, the impeachment would have followed the following question:

> And when Sergeant Hickey said that he saw you ten feet from him holding the radio, again, he was not telling the truth either, was he?

While this question was referred to by the majority as one relating to credibility, and is apparently also viewed as such by the dissenting judge, it must be observed that it contains a recitation of facts indicative of guilt of the offense of petit larceny. This suggests that the line that the dissent in *Dorman* would draw would be exceedingly difficult to observe in practice.

■ The state of the law of this jurisdiction is not, however, so restrictive. In light of our holdings in *Fields, Bailey* and *Dorman,* it can be concluded that on cross-examination the government may not juxtapose questions concerning previous convictions for similar offenses with testimony by the defendant which is in essence a general denial that he committed an offense charged. Nor may the government engage with defendant in a sequence of questions and answers in which the defendant's responses, while not general denials of an offense charged, deny as in *Fields* a key element of an offense charged, and are followed closely by repeated impeachment by reference to convictions for similar offenses. The prohibition does not extend to mere juxtaposition of questions regarding previous convictions for similar offenses with testimony that relates to one or more elements of the offense charged. Nor does the prohibition extend to juxtaposition of such impeachment with questions relating to credibility where defendant's preceding answer does not embrace what is obviously a general denial of a crime charged.

■ In so describing the present state of the law, we do not indicate that the prosecution is permitted to engage in all other forms of previous-conviction impeachment other than those this court has heretofore explicitly declared improper. Given the limitless variations of fact patterns and examination techniques, there will always remain the necessity of determining whether particular records evince clear abuse. The test is whether the prosecutor's reference to the defendant's prior convictions during his cross-examination can be intended only to suggest to the jury that defendant is guilty of the crime charged because of his previous conviction or convictions.

### IV

■ Applying the foregoing to the cross-examination of appellant, it is readily seen that the prosecutor's initial impeachment of appellant with a prior larceny conviction and second impeachment with a pri-

or attempted robbery conviction were proper and did not involve a sequence of questions held objectionable in *Fields or Bailey.* Closer examination must be given the prosecutor's third impeachment of appellant, which contained the following series of questions:

[PROSECUTOR]: Mr. Baptist, when you found the fourth box car, you opened it up and you found those small boxes of canned food, you felt pretty lucky; didn't you?

[APPELLANT]: If you mean the fourth box car in question, which was the first box I got to, then my contention is that I wasn't trying to steal anything.

[PROSECUTOR]: That is the best you can answer the question?

[APPELLANT]: That is the best I can answer the question.

[PROSECUTOR]: How do you explain the fact that you took down four of the boxes and stacked them up by the door of the box car?

[APPELLANT]: Pardon?

[PROSECUTOR]: How is it that you explain—can you explain to this jury why you stacked up four of the boxes next to the door of the box car?

[APPELLANT]: I didn't stack up four boxes near the door of the box car. I only picked up one box and turned it around to see what it was.

[PROSECUTOR]: Mr. Baptist, are you the same Alvin Baptist who, on May fifth, 1980, before the Superior Court of the District of Columbia, was convicted of attempted petit larceny?

The prosecutor's impeachment here, unlike that in *Bailey* and *Fields,* did not immediately follow appellant's general denial of the charged crime. Nor was there a sequence of questioning concerning a key element of a charged offense intermingled with repeated impeachment by previous convictions of similar offenses as in *Fields.* Indeed, the prosecutor passed up an opportunity to impeach the appellant after the first answer in the series of questions and

answers quoted above. That answer was a flat denial of an attempt to steal. Government counsel asked several questions about the details of the offense before concluding his cross-examination with impeachment by previous conviction. The fact that the preceding answer dealt with circumstances surrounding commission of the alleged offenses did not preclude such questioning. We conclude that the manner of impeachment here was permissible.[4]

## V

■ Appellant's other contentions are without merit. The trial court's respective instructions on the jury's "duty" to convict and on the "reasonable doubt" standard were proper and comply with existing case law. *See* D.C. Bar Ass'n Criminal Jury Instruction, Nos. 2.08, 2.09 (3d ed. 1978); *see also Watts v. United States,* 362 A.2d 706, 711 (D.C.1976) (en banc) (approving "duty to convict" language); *Moore v. United States,* 120 U.S.App.D.C. 203, 204, 345 F.2d 97, 98 (1969) (approving "reasonable doubt" instruction). In addition, viewing the evidence in a light most favorable to the government, we are satisfied that both the direct and circumstantial evidence adduced at trial were sufficient to sustain appellant's convictions. *See Dyson v. United States,* 450 A.2d 432, 436–37 (D.C.1982); *Massey v. United States,* 320 A.2d 296, 299 (D.C.1974).

*Affirmed.*

4. In view of our holding here, we need not reach the question whether the prosecutor's assertedly improper cross-examination constituted harmless error under the circumstances of this case. *Kotteakos v. United States,* 328 U.S. 750, 765 (1946); *United States v. Henry, supra* note 2, 174 U.S.App.D.C. at 95, 528 F.2d at 668 (1976).