## State of Vermont v. Timothy R. Boucher

[478 A.2d 218]

No. 82-332

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed March 30, 1984

*John R. Churchill* and *Gordon C. Gebauer, Jr.,* Chittenden County Deputy State's Attorneys, and *James Moran,* Law Clerk (On the Brief), Burlington, for Plaintiff-Appellee.

*Nancy E. Kaufman,* Montpelier, for Defendant-Appellant.

Gibson, J. After trial by jury, defendant was convicted of assault and robbery in violation of 13 V.S.A. § 608(b). In his appeal from the judgment of the Vermont District Court, Unit No. 2, Chittenden Circuit, he challenges the validity of his impeachment by prior conviction. He also contends the trial court committed plain error in its instruction to the jury. We affirm the judgment of the district court.

Defendant was accused of entering the bedroom of an elderly Burlington couple in the early morning hours of July

31, 1980. The victims, asleep in bed, were awakened by two intruders wearing garbage bags as hoods; one was carrying a pitchfork and the other a club. The intruders, after taking money and a jewelry box from the couple, left the scene in the victims' automobile. The couple was not able to provide a specific description of the intruders to the police.

Defendant was implicated in the crime only after an acquaintance pleaded guilty to several other crimes as well as to the incident in question. During conversations with law enforcement officials, this person named defendant as his accomplice and agreed to testify at defendant's trial.

At trial, defendant took the stand and denied any involvement in the crime. He testified that he was not present at the scene. A crucial issue, therefore, was whether the jury believed the testimony of defendant or of his friend, the prosecution's chief witness. The trial was, in essence, a credibility contest. The jury's task was to decide whom to believe.

Both defendant and the prosecution's witness had been convicted of prior crimes. Defendant had on a previous occasion pled guilty to four counts of petit larceny. This plea had been entered pursuant to a plea agreement wherein the State agreed to dismiss one count of armed robbery. The four prior convictions, therefore, arose from a single charge.

Prior to trial, defendant submitted a motion seeking to avoid the introduction of the four petit larceny counts for impeachment purposes. In a written opinion, the court denied the motion. When defendant took the stand at trial, his prior petit larceny record was placed in evidence. The witness for the prosecution was impeached in similar fashion. The jury found that defendant was guilty as charged. This appeal followed.

I.

It is the rule in Vermont that "the cross-examination of a witness concerning prior convictions is subject to the discretion of the trial court." *State* v. *Gardner*, 139 Vt. 456, 458, 433 A.2d 249, 251 (1981). Prior convictions involving crimes of "moral turpitude" may be admitted to test credibility. 12 V.S.A. § 1608. See also V.R.E. 609 (same standard, but adopted subsequent to trial herein). In *Gardner* we set forth some of the factors to be considered by the trial court

in determining whether the probative value of such evidence is outweighed by its prejudicial effect. *State* v. *Gardner, supra,* 139 Vt. at 460, 433 A.2d at 251. The list, although not exhaustive, contained such considerations as (1) the nature of the impeaching crime, (2) the length of the defendant's criminal record, (3) the remoteness in time of the convictions, (4) the relative importance of the defendant's testimony, and (5) the need for impeachment in the particular case. *Id.* at 460–61, 433 A.2d at 251–52. The trial court's ruling is discretionary; nevertheless, the court must not give "short shrift" to the *Gardner* criteria. *State* v. *Jarrett,* 143 Vt. 191, 193, 465 A.2d 238, 240 (1983).

Although we decline to alter the rule enunciated in *Gardner* and adopted by V.R.E. 609, "the probative value of prior crimes for evaluating credibility is suspect at best." *State* v. *Shattuck,* 141 Vt. 523, 530, 450 A.2d 1122, 1125 (1982). See generally Spector, *Rule 609: A Last Plea for Its Withdrawal,* 32 Okla. L. Rev. 334 (1979).

### A.

Defendant's written motion to exclude the four counts of petit larceny was based primarily on two factors: (1) petit larceny was so similar to the present charge of armed robbery as to be unduly prejudicial, and (2) impeachment by these similar crimes would have a chilling effect upon defendant's willingness to take the stand to present testimony crucial to his defense.

On appeal, defendant argues the trial court erred in finding that petit larceny was not so similar to the crime of armed robbery as to be prejudicial. He also argues the court erred in weighing the *Gardner* criteria equally. He feels that the necessity for his testimony should carry greater weight than the other factors and should militate heavily against admission of his past record.

■ Larceny is a crime of moral turpitude, *State* v. *LaPlante,* 141 Vt. 405, 410, 449 A.2d 955, 957–58 (1982), because it is inherently base. *Id.* If committed within fifteen years, 12 V.S.A. § 1608, it is admissible for impeachment purposes, subject to the trial court's discretion. *State* v. *Foy,* 144 Vt. 109, 113, 475 A.2d 219, 222 (1984).

Although it may have been crucial that defendant take the stand in his own defense, we note that this case "had narrowed to the credibility of two persons—the accused and his accuser—and in those circumstances there was greater, not less, compelling reason for exploring all avenues which would shed light on which of the two witnesses was to be believed." *Gordon* v. *United States*, 383 F.2d 936, 941 (D.C. Cir. 1967). The prior record of the prosecution's witness had been exposed, and we cannot say that defendant's impeachment was not justified as well. The trial court permitted defendant's impeachment only after full consideration of the *Gardner* requirements.

Balancing the prejudicial effect of the prior convictions against the probative value of the evidence, we do not find a clear abuse of discretion. "[T]heir bearing on veracity, when joined with the fact that they constituted the only substantial means of impeachment available to the State, outweighed the risk of prejudice to the defendant." *State* v. *Foy*, *supra*, 144 Vt. at 115, 475 A.2d at 223.

### B.

Defendant also complains of the manner in which his prior crimes were introduced at trial. First, he claims that during cross-examination the prosecutor "strung out the four convictions into an 'extended recitation' . . . which gave the jury the . . . impression that four separate and distinct petty [sic] larcenies had been committed." Second, he objects to the sequence of the questions asked by the prosecution, claiming the questions were artfully arranged to suggest to the jury that he was guilty of the present crime because he committed similar past crimes. Last, he objects to a remark made during the prosecution's closing argument to the jury, commenting on his past record.

Prior to trial, the prosecution agreed that it would inquire only whether defendant "was the same Timothy Boucher that on such and such a date was convicted of four counts of petty [sic] larceny." Only the fact of prior conviction would be introduced and not the background of the offenses or the fact of reduction. The State was represented by a different prosecutor at trial. During trial this prosecutor asked defendant

about each count of petit larceny in a separate question rather than referring to the four counts within a single question. This form of questioning was objected to at trial.

The impeachment followed a line of questions concerning defendant's whereabouts on the night in question. Immediately after defendant denied he was present at the scene, the prosecutor exposed his four prior convictions. Defendant contends this chronology invited the jury to consider the convictions as more than evidence of his credibility.

During the rebuttal portion of closing argument, the prosecutor reminded the jury to "remember that [defendant] himself has a somewhat checkered past as you know. He's four times convicted of petty [sic] larceny." Defense counsel failed to object to the sequence of the questions or to the comment made during closing argument.

Defendant maintains, on appeal, that these tactics violated his right to a fair trial. Defendant cites *State* v. *Lapham*, 135 Vt. 393, 406, 377 A.2d 249, 257 (1977), in claiming the prosecutor's conduct "trespass[ed] the bounds of propriety."

██ ██ At the outset, we note that two of the three errors claimed by defendant were not objected to below. Therefore, to warrant reversal on either of those two claims, we must find the conduct constitutes plain error. V.R.Cr.P. 52(b). Plain error has been defined by this Court as glaring error that is "so grave and serious that it strikes at the very heart of defendant's constitutional rights." *State* v. *Welch*, 136 Vt. 442, 445, 394 A.2d 1115, 1116 (1978) (citing *State* v. *Morrill*, 127 Vt. 506, 511, 253 A.2d 142, 145 (1969)). We will consider defendant's claims in order.

The manner in which the prosecutor elicited the fact of defendant's four prior convictions did deviate from the form agreed to by the prosecution prior to trial. Nothing was elicited from defendant, however, other than the fact of the four prior convictions. The State's promise not to reveal the underlying armed robbery charge was not breached.

██ During impeachment by prior conviction the number of counts may be shown. *United States* v. *Phillips*, 488 F. Supp. 508, 513 (W.D. Mo. 1980). If "the fact of conviction of one count . . . has probative value on credibility, so conviction on

more than one count has similar value without unfairness." *Id.* We cannot say the prosecution strayed so far from its agreement or from accepted practice as to impugn defendant's right to a fair trial.

At trial, the following sequence of questions was asked by the prosecution.

Q. Now, where were you on the night of July 31st, 1980?
A. Is that the night of the armed robbery? More than likely after studying the hours, I was home in bed, you know. I don't go out much at all, and I'm usually in bed that reasonable an hour.
Q. Anybody at home with you?
A. Yes, my whole family.
Q. The whole family?
A. Yes, sir.
Q. They would know you were there?
A. Yes.
Q. Who had the pitchfork, you or John?
A. Beg pardon?
Q. Who had the pitchfork, you or John?
A. I couldn't tell you. I had no involvement in that.

Immediately thereafter, defendant's four prior convictions for petit larceny were introduced.

■ This Court, in *State* v. *Moran*, 141 Vt. 10, 19–20, 444 A.2d 879, 884 (1982), held that "evidence of prior convictions is not admissible for the purpose of showing that a defendant in a criminal trial is 'the type of person who would do such a thing.' " Defendant relies upon several cases from the District of Columbia in which the manner of impeachment was held to be so prejudicial as to warrant a new trial. In *United States* v. *Carter*, 482 F.2d 738, 740 (D.C. Cir. 1973), the prosecution asked the defendant whether he was someone who would rob another person. Upon receiving a negative answer, the prosecution impeached him with, among other convictions, six counts of robbery. The court found such questions were calculated to show criminal propensity and not capacity for truth and veracity. Subsequent to the decision in *Carter, supra,* the same court found error in *United States* v. *Henry*, 528 F.2d 661, 664–65 (D.C. Cir. 1976), when a prosecutor, cross-

examining a defendant who was on trial for narcotics violations, asked whether the defendant had supplied someone with cocaine and, after eliciting a denial, immediately impeached the defendant with a prior conviction of possession with intent to distribute.

A similar line of cases has been decided by the District of Columbia Court of Appeals. In *Fields* v. *United States*, 396 A.2d 522 (D.C. 1978), the defendant was charged with various crimes, including carrying a pistol without a license. On cross-examination the prosecutor asked whether defendant was armed on the night in question. When the defendant replied in the negative, he was impeached with a prior conviction of carrying a pistol without a license. *Id.* at 526–27. The court found plain error because the sequence of questions was "designed to suggest to the jury that because appellant carried a gun before, he was probably guilty of the crime charged." *Id.* at 528. Another conviction was reversed in *Bailey* v. *United States*, 447 A.2d 779 (D.C. 1982), when the prosecution introduced a prior conviction for armed rape immediately upon the heels of defendant's denial of a rape for which he was charged at trial. That same court, however, in *Dorman* v. *United States*, 460 A.2d 986 (D.C. 1983), and *Baptist* v. *United States*, 466 A.2d 452 (D.C. 1983), refused to find error in two cases in which the manner of impeachment on cross-examination seems to fall within the conduct prohibited by *Fields, supra,* and *Bailey, supra.* Faced with persuasive and important precedent, we find differing results that seem to hang upon the most subtle factual distinctions. We can only conclude that *Dorman, supra,* and *Baptist, supra,* signal a retreat from that court's earlier position. See, e.g., *Dorman, supra,* 460 A.2d at 991–93 (Ferren, J., dissenting) (majority's attempt to distinguish facts of *Dorman* from those of *Bailey, Henry, Fields* and *Carter* is not convincing).

 ██ We concur with *Dorman, supra,* insofar as it states that a prosecutor must not "affirmatively and deliberately [use] prior convictions for the forbidden purpose, i.e., as evidence of guilt of the crime charged." 460 A.2d at 988. The test, as articulated in *Baptist, supra,* "is whether the prosecutor's reference to the defendant's prior convictions during his cross-examination can be intended *only* to suggest to the jury

that defendant is guilty of the crime charged because of his previous conviction or convictions." 466 A.2d at 458 (emphasis added).

We do not find plain error in the manner of impeachment in this case. Although we believe the cross-examination here is very similar to that found acceptable in *Dorman,* we do not base our position only upon the factual nuances of the cross-examination itself.

Defendant was impeached at the most logical point during the brief cross-examination. The prosecutor began with general questions and then narrowed his focus to the activities of defendant on the night in question. As mentioned before, this was a credibility contest between two witnesses—a "swearing contest," as it is often called. The State's witness placed defendant at the scene; defendant denied his presence there. Defendant's credibility was directly at issue, and we cannot say that his prior crimes were introduced to prove that he was "the type of person who would do such a thing."

We do not attempt to define precisely when and in what manner a prosecutor may impeach a criminal defendant but will examine the facts and surrounding circumstances of each case. In the absence of proper objection at trial, we do not find this sequence of questions constituted such disregard of defendant's constitutional rights as to constitute plain error.

During closing argument, the prosecution prefaced a series of remarks to the jury with the query, "Who is kidding who [sic] here?" He then urged the jury to consider inconsistent testimony and to make a credibility judgment in favor of the State's witness. He told the jury, however, if they believed the witness was lying then they should not convict defendant. At this juncture he remarked as to defendant's "checkered past." Immediately following the prosecution's rebuttal and before the jury was charged the court gave careful limiting instructions regarding the closing arguments. The court told the jury that any reference to defendant's "checkered past" was "only admissible to help you evaluate the credibility of that witness, that is, the believability of that witness." Again, we are mindful that no objection to the comment was made during trial. We find no "studied purpose to

arouse the prejudices of the jury . . . ." *State* v. *Lapham, supra,* 135 Vt. at 407, 377 A.2d at 257. If any error occurred, it was adequately corrected by the court's instructions and was not so grave as to warrant reversal under the plain error standard.

## II.

Defendant's last claim of error is that the court improperly instructed the jury on the issue of flight. The following instruction was given to the jury.

> Flight of a person accused of a crime from the scene of the crime is a circumstance which you can consider, together with all the facts of the case, and may justify your finding of guilt of the accused. But the mere leaving of the scene of a crime does not warrant an inference of guilt alone, unless the unexplained circumstances justify an inference that the departure was made with a consciousness of guilt and for the purpose of avoiding apprehension.

Defense counsel made no objection to the instruction even though there was adequate notice of the court's intention to present a flight instruction. Moreover, during the charge conference, defense counsel agreed that this instruction was acceptable. In the absence of objection below, we again note that we must find glaring error before considering his claim on appeal. *State* v. *Billado,* 141 Vt. 175, 182, 446 A.2d 778, 782 (1982).

The instructions given here left it to the jury to determine whether there was flight and specified that "the mere leaving of the scene of a crime does not warrant an inference of guilt alone." The instruction did not tell the jury that there had been flight but left this conclusion as well as any inferences to be drawn for them to determine. *People* v. *Guillebeau,* 107 Cal. App. 3d 531, 546, 166 Cal. Rptr. 45, 53 (1980) (no prejudicial error as instruction left it to jury to determine whether flight was proved) ; see *Hampton* v. *State,* 238 Ga. 608, 610, 234 S.E.2d 521, 523 (1977) (no error occurred, in part because the charge left it to the jury to determine whether there was flight and any inferences to be drawn therefrom).

■ The jury instructions given do not constitute glaring error.

*Affirmed.*