Jesse FIELDS, Jr., a/k/a Preston
Daniels, Appellant,

v.

UNITED STATES, Appellee.

No. 11916.

District of Columbia Court of Appeals.

Argued March 16, 1978.
Decided Sept. 29, 1978.

David M. Bullock, Washington, D. C., appointed by this court, for appellant.

Whitney M. Adams, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Harry R. Benner, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before GALLAGHER, YEAGLEY and MACK, Associate Judges.

YEAGLEY, Associate Judge:

In an eight-count indictment filed on December 9, 1975, appellant and William Wright were charged with armed kidnapping (D.C.Code 1973, §§ 22–2101, –3202), kidnapping (D.C.Code 1973, § 22–2101), armed robbery (D.C.Code 1973, § 22–2901), three counts of assault with a dangerous weapon (D.C.Code 1973, § 22–502), and carrying a pistol without a license (D.C.Code 1973, § 22–3204). Prior to trial, Wright entered into a plea bargain with the government, under the terms of which he agreed to plead guilty in an unrelated case to a charge of manslaughter while armed, and promised to testify against appellant in this case. In return, the charges against Wright in this case were dismissed. After a jury trial, appellant was convicted of armed kidnapping, armed robbery, assault with a dangerous weapon,[1] and carrying a pistol without a license.

Appellant raises two contentions before this court. The first relates to the trial court's alleged failure to give the jury, sua sponte, a series of pertinent final instructions. The second relates to the allegedly impermissible manner in which the prosecutor impeached appellant by reference to a

1. The government dismissed the other two counts of assault with a dangerous weapon before the case was submitted to the jury.

prior conviction. We find no merit to the former contention, but hold that the latter states a ground for reversal under the plain error standard of Super.Ct.Cr.R. 52(b).

The government's case against appellant relied primarily on the testimony of the victim, William Kearney. Kearney testified that on September 12, 1975, at approximately 12:30 a. m., he stopped at the 1400 block of Girard Street, N.W., to talk to a friend nicknamed "Beaver," who asked him for a ride. After "Beaver" got into the car, Kearney saw appellant, whom he had known for at least two years, and Wright, whom he had also known for several years, running toward his vehicle with guns drawn. Appellant and Wright forced Kearney to walk to a nearby vacant lot. Wright then ordered Kearney to empty his pockets, and appellant fired his gun once in an unknown direction. Kearney emptied his pockets, putting his wallet and money atop a wall. After appellant indicated that he liked Kearney's watch and ring, Wright told Kearney to place those items on the wall as well. Appellant took everything from the wall, as Wright pistol-whipped Kearney in an attempt to force him to walk to the back of a liquor store. Appellant then ordered Kearney to get back into his car. Kearney complied. By this time, "Beaver" had disappeared.

Appellant and Wright, both still holding their guns, got into Kearney's car and forced him to drive. Appellant sat in the front passenger seat. Wright positioned himself in the rear, directly behind the driver's seat, and held his gun at Kearney's neck. After driving about two blocks to the end of Euclid Street, Kearney stopped the car at an intersection and precipitated a struggle with Wright outside of the vehicle. Meanwhile, appellant drove off. A police officer appeared on the scene, and broke up the fight between Kearney and Wright. Kearney told the officer that Wright had a gun and was trying to kill him.

Wright was placed under arrest. Several minutes later the officer found Kearney's car parked nearby in an alley. The driver's door was open and the keys were in the ignition. The police later recovered two latent fingerprints from the inside left front window and the inside rearview mirror of the vehicle. A police fingerprint specialist was qualified as an expert and testified that the latent print recovered from the left front window was made by the left index finger of appellant. Kearney's version of the incident was closely corroborated by the testimony of Wright, who appeared as a rebuttal witness for the government.[2]

The defense presented five witnesses, including appellant, in an effort to show that appellant's fingerprint could just as likely have been left in the car on another occasion, and that appellant was merely an innocent bystander during the incident in question. The defense theorized that Wright's attack on Kearney was provoked by animosity.

Appellant testified as follows: On the night in question, Wright had wanted to purchase drugs, but was not familiar with the man who was selling them, and had thus sought appellant's aid. On the way to the park, appellant paused to buy a bottle of wine. As he moved to catch up with Wright, he heard a shot and saw Wright and Kearney arguing. Wright had a gun. Appellant, who was unarmed, sought to find out what was happening, and Kearney asked appellant not to let Wright kill him. Appellant then saw Kearney, Wright, and a third person enter Kearney's car, and watched as Kearney was forced into the car by Wright. After they left, appellant picked up Kearney's wallet and paper bag, which had been placed on a ledge at Wright's direction. Appellant testified that

---

**2.** During direct examination, the prosecutor brought out the terms of the plea agreement between Wright and the government. Wright testified that he had not been sentenced on the manslaughter charge and that he understood he could receive a life sentence. During cross-examination, Wright confirmed that if he had not testified for the government he would not have been given the plea offer and that his testimony would lead to the dismissal of the robbery and kidnapping charges against him.

he had been in Kearney's car on previous occasions, and that he believed he had been in the car late on the afternoon preceding the incident. Appellant was impeached with convictions for possessing an unregistered firearm, assault on a police officer, escape, and bail jumping.

At the close of evidence, the trial court informed counsel for both sides that it would give instructions on the following Monday, and solicited the submission of requested instructions. On Monday, defense counsel asked only that the trial court not give an instruction on the defendant as a witness.[3] The trial court subsequently instructed the jury, *inter alia*, that "[t]he arguments of the lawyers are not evidence," that the jurors "are the sole judges of who is to be believed and to what extent they are to be believed," and that the fact "that a witness and people may have been convicted of criminal offenses does not bear in any way, shape, or form on the guilt or innocence of the defendant. They only bear on the credibility that may attach to the witness' testimony, whoever it may be." After the court completed its charge, defense counsel announced that he was satisfied with the instructions.

### I

Appellant contends that the trial court committed plain error by failing in its final charge to instruct the jury sua sponte on the evaluation and effect of the testimony of an expert witness,[4] the limited purpose for which prior convictions of a defendant might be considered,[5] and the caution and care required in considering the testimony of an accomplice who receives benefits in return for his agreement to testify.[6] Appellant's position is that the cumulative impact of these omissions was to deprive him of a fair trial by rendering impossible the jury's task of applying the law to the evidence and reaching a factual decision within the framework of the law.

In order to seek appellate review of the trial court's charge to the jury, a defendant must ordinarily object to the charge before the jury retires. Super.Ct. Cr.R. 30. *See Johnson v. United States*, D.C.App., 387 A.2d 1084 (1978) (en banc). In the absence of such an objection, an appellant bears the heavy burden of showing that the instructions as given "were so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Watts v. United States*, D.C. App., 362 A.2d 706, 709 (1976) (en banc). We hold that appellant has not sustained this burden in the case at bar.

### A. The Expert Testimony

It is well settled that upon request, the trial court should instruct the jury that they are not bound by the opinion of an expert, but may treat his testimony as they treat other evidence, according it such weight as in their judgment it is entitled to receive. *See Quarles v. United States*, D.C. App., 308 A.2d 773 (1973). Even in the absence of a request, the trial court should ordinarily give such an instruction if the testimony of the expert has been a substantial evidentiary factor in the trial of the case. *Id.*

Here, the prosecution's case did not hinge on the fingerprint expert's testimony. There was direct testimony from both Kearney and Wright that appellant had participated in the crime and had, in the course of committing the offenses, entered the car in which his fingerprint was found. When considered in the context of the entire record, the testimony of the fingerprint expert was not an important evidentiary factor. Moreover, defense counsel had ample opportunity to cross-examine the expert and to argue to the jury about the weight which should be accorded his testimony, and the trial court instructed the jurors that

3. *See* District of Columbia Bar Association, Criminal Jury Instructions for the District of Columbia No. 2.27 (2d ed. 1972).

4. *Id.* at No. 1.05.

5. *Id.* at No. 1.08.

6. *Id.* at Nos. 2.22, 2.23.

they were the final arbiters of the facts. Appellant cannot sustain an assignment of plain error here.

## B. *Appellant's Prior Convictions*

■ During appellant's cross-examination, the government introduced the fact that appellant had previously been convicted for possessing an unregistered firearm, assault on a police officer, escape, and bail jumping. Immediately following introduction of the first prior conviction, the trial court gave a cautionary instruction on the limited purpose for which the prior conviction was admitted. The court gave an abbreviated version of the same instruction after introduction of the other convictions. It did not, however, give an instruction to this effect during its final charge to the jury. Appellant observes, correctly, that where appropriate, a trial court is ordinarily required to give a strong, unambiguous instruction on the use of prior convictions in its final charge to the jury. *See Dixon v. United States*, D.C.App., 287 A.2d 89, *cert. denied*, 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1972).

■ Here, contemporaneous with the introduction of appellant's prior convictions, the jury was instructed on the limited purpose for which the convictions were to be considered. In addition, in its final charge to the jury, the trial court instructed, in essence, that a witness' prior convictions were to bear only on the credibility that the jury may attach to the witness' testimony. In light of the earlier, immediate cautioning instruction, we think it reasonable to infer that the jury included appellant among the witnesses referred to in this final charge, and we hold that the trial court's failure to instruct more specifically does not rise to the level of plain error.

## C. *The Accomplice Testimony*

■ When a witness has a strong motivation to lie, the trial court's failure to give a cautioning instruction when requested is reversible error. *United States v. Kinnard*, 150 U.S.App.D.C. 386, 465 F.2d 566 (1972). Indeed, the better practice is for trial

judges to caution the jury about the unreliability of an accomplice who testifies on behalf of the government, even in the absence of a request. *United States v. Leonard*, 161 U.S.App.D.C. 36, 494 F.2d 955 (1974). The failure to give an accomplice instruction, however, is not plain error when the testimony of the accomplice is corroborated by other evidence. *Id.* In this case, Wright's testimony was corroborated by the testimony of the victim, Kearney. Accordingly, the failure to instruct the jury on the necessity to receive with caution and scrutinize with care the accomplice's testimony was not plain error.

## II

Appellant's second assignment of plain error relates to the manner in which the government used appellant's prior convictions to impeach him. During the course of his direct testimony, appellant denied participating in the robbery and kidnapping, and denied having a gun in his hand at the time. The prosecutor opened his cross-examination as follows:

Q. Now, Mr. Fields, you had a gun with you that night; didn't you?

A. No, sir.

Q. Are you the same Jesse Fields that was convicted in 1969 of carrying a pistol without a license?

A. I'm the Jesse Fields that pleaded guilty to that charge.

Q. Well, did you plead guilty because you were guilty?

A. Yes, sir.

Shortly thereafter, the trial court instructed the jury on the limited purpose for which the prior convictions should be considered. The prosecutor then resumed his cross-examination, returning to the same point several minutes later.

Q. Did you have a gun with you that night?

A. No.

Q. Are you the same Jesse Fields that was convicted of unregistered possession of a firearm?

A. I'm the same Jesse Fields that stepped forward and pled guilty.

THE COURT: I instruct the jury the mere fact this defendant was convicted of that offense is not to be taken as guilt in any way of this offense. It only bears on his credibility as a witness.

BY [THE PROSECUTOR]:

Q. Was that in 1975 that you were convicted of that second weapons offense?

A. Yes, sir, I think it was. I think it was the same year.

The prosecutor then proceeded to introduce evidence of several other convictions. At no point did defense counsel object to the manner in which the prosecutor used the prior convictions to impeach appellant.

 It is axiomatic that a prior conviction may not be introduced by the prosecution to prove that the defendant is guilty of the crime with which he is charged.[7] On the other hand, once the defendant testifies, his credibility may be impeached by reference to his prior convictions. One problem attending the introduction of prior convictions as impeachment evidence is that the jury may be unable to restrict the use of this evidence to its proper purpose. Rather than regarding this evidence as probative solely of the defendant's credibility as a witness, the jury may infer from the prior criminal conviction that the defendant is a bad man and that he therefore probably committed the crime for which he is on trial. The risk of jury misuse of other crimes evidence is at its greatest when, as in the instant case, the crime charged and the crime used to impeach the defendant are similar. To minimize this risk, the prosecutor must not impeach the defendant with prior convictions in a manner which suggests to the jury that because of his prior criminal acts, the defendant is guilty of the crimes charged. *United States v. Henry*, 174 U.S.App.D.C. 88, 528 F.2d 661 (1976); *United States v. Carter*, 157 U.S.App.D.C. 149, 482 F.2d 738 (1973).[8]

In *Henry*, the prosecutor employed the same tactic used in this case. The defend-

ant was charged, *inter alia*, with possession of a narcotic drug. During cross-examination the prosecutor asked the defendant if he had supplied cocaine to the complaining witness. When the defendant answered in the negative, the prosecutor impeached him with a prior conviction for possession of cocaine with intent to distribute. The circuit court held that "the sequence of questions invited the jury to consider the questions as more than evidence relating to the defendant's credibility." *United States v. Henry, supra*, 174 U.S.App.D.C. 95 at 94, 528 F.2d at 744. Even though the trial court had given cautioning instructions, the court held that the risk of prejudice mandated reversal of the convictions. The court expressed its view that limiting instructions were insufficient to eliminate the possibility of prejudice to the defendant. The court had reached the same result in *Carter*, despite the fact that the trial court had given both an immediate limiting instruction and a cautioning instruction in its final charge to the jury.

In the instant case, appellant denied participation in the crimes with which he was charged, and asserted that he was an innocent bystander. Crucial to his version of the incident was the fact that he was unarmed on the night in question. Appellant asserts that the prosecutor introduced his prior firearm conviction in a manner which suggested to the jury that he was the type of man who usually carried a gun. The government responds that the line of questioning used by the prosecutor does not rise to the level of plain error.

 We think appellant is correct. Questions concerning appellant's prior conviction for unregistered possession of a firearm, asked by the prosecutor immediately after appellant had denied possessing a gun on the occasion of the offense charged, likely gave the jury the impression that evidence of appellant's prior conviction was being offered to rebut appellant's denial

---

7. D.C.Code 1973, § 14–305(b) specifically authorizes the use of such a prior conviction "for the purpose of attacking the credibility of a witness."

8. We recognize that both of these cases are post Court Reorganization and therefore not binding on us. *M. A. P. v. Ryan*, D.C.App., 285 A.2d 310 (1971).

that he possessed a gun at the time in question. We will not countenance such a highly suggestive and prejudicial sequence of questions, which appeared designed to suggest to the jury that because appellant carried a gun before, he was probably guilty of the crime charged.

■ In both *Carter* and *Henry*, the circuit court held that impermissible questioning of the type conducted here could not be cured by cautioning instructions. When an error is of such magnitude that it cannot be cured by an instruction from the court, it must be characterized as plain error. *United States v. Garber*, 471 F.2d 212 (5th Cir. 1972). Indeed, it would make no sense for us to weigh against appellant his failure to object below, under circumstances in which timely objection could not correct the harm done. The rationale behind the requirement that counsel specifically object to errors is to allow the trial court an opportunity to correct the mistake. *Adams v. United States*, D.C.App., 302 A.2d 232, 234 (1973). When the *Carter-Henry* line of questioning is utilized by the prosecution, however, the mistake cannot be corrected. We hold that under the circumstances here presented, the prosecutor's questions constituted plain error.

Accordingly, the judgment on appeal is

*Reversed.*