*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CF-240

RENALDO K. LUCAS, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-14701-11)

(Hon. Robert I. Richter, Trial Judge)

(Argued November 22, 2013                    Decided October 30, 2014)

*Christine A. Monta*, Assistant Public Defender, with whom *James Klein* and *Jaclyn S. Frankfurt*, Public Defender Service, were on the brief, for appellant.

*Kristina Ament*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney, *Elizabeth Trosman*, *John P. Mannarino*, and *Amanda Winchester*, Assistant United States Attorneys, were on the brief, for appellee.

Before THOMPSON, *Associate Judge*, and STEADMAN and RUIZ, *Senior Judges*.

RUIZ, *Senior Judge*: Renaldo Lucas was convicted by a jury of unlawful possession of a firearm by a felon,[1] carrying a pistol without a license,[2] possession of an unregistered firearm,[3] and possession of ammunition without a valid registration for a firearm.[4] On appeal he argues that a comment made by the prosecutor in closing summation was improper and that, uncorrected by any limiting or curative instruction, the comment prejudiced his right to a fair trial. We agree that the prosecutor's comment may have implied, improperly, that appellant was guilty because he was guilty of a past crime. However, we conclude that appellant was not substantially prejudiced and we therefore affirm appellant's convictions.

## I.

The government's principal witness was Officer Andre Parker, who was on duty in his marked patrol car on August 3, 2011. Officer Parker testified that around 12:15 a.m. that morning he noticed two cars parked at the entrance to an

---

[1] D.C. Code § 22-4503 (a)(1) (2012 Repl.).

[2] D.C. Code § 22-4504 (a)(1) (2012 Repl.).

[3] D.C. Code § 22-2505.01 (2012 Repl.).

[4] D.C. Code § 7-2506.01 (3) (2012 Repl.).

apartment parking lot and a man sitting on the adjacent curb. Thinking the situation was suspicious, Officer Parker approached in his patrol car and lowered his window. The man told him everything was "okay" but he said so in a slurred voice that made Officer Parker think the man was under the influence of alcohol. Officer Parker exited the patrol car and approached the two vehicles on foot.

As the officer approached, one of the cars started to quickly reverse. Officer Parker pursued the car on foot, and saw appellant, who was in the passenger seat, "making a movement about his waist area" like he was removing a seatbelt. After reversing about forty yards, the car stopped. Appellant got out of the vehicle and ran off with his right hand clutched at his waist. Officer Parker gave chase. Just before appellant ducked behind a parked pickup truck, Officer Parker testified, appellant removed an object from his waist area and threw it. Officer Parker "saw and heard a silver object hit the rod [sic] iron fence" that ran along the boundary of the parking lot behind the truck. To Officer Parker, the object sounded "like it was something heavy" and the sound was "of two metals clinging [sic] together, it was a loud bang," not the sound a bottle or a can would make. The officer caught up with appellant behind the truck and handcuffed him. Appellant told Officer Parker that he had thrown a bottle of beer he had been drinking and later explained that he ran away because he knew the driver had a

suspended license. Officers searched the area adjacent to where appellant was seized. They recovered a silver and black handgun from the other side of a tall fence that bordered the parking lot.

On cross-examination, Officer Parker admitted that he was "uncertain" of the object appellant had thrown as he was pursued.[5] This was in part because the encounter occurred at night[6] and because when the officer began his pursuit as the car reversed quickly backwards, he was as far as forty yards away. He had, however, closed the distance to about ten feet by the time the object was thrown. Officer Parker also admitted that there were a lot of weapons in the area along Ridge Road where appellant was arrested. He further stated that photos taken of the area around the fence-line where the gun was found showed "a bunch of trash" and bottles, including at least one beer bottle.

---

[5] Another officer, Ho Le, pursued appellant from a separate angle, in order to head him off. At one point Officer Le lost track of Officer Parker and appellant, who were separated from him by about four car lengths. Officer Le testified that he did not see appellant throw anything nor did he hear anything strike the fence, but his testimony makes clear that this was simply because his attention was focused on running at an angle to intercept appellant, not on appellant himself.

[6] Officer Parker testified that there were street lights in the parking lot and that he had his flashlight in hand during the pursuit.

Officer Bernard Lyons, a crime scene technician, testified that he processed the recovered handgun, a semiautomatic pistol, and found usable prints on the ammunition magazine, but not on the exterior of the weapon. The usable prints recovered were smudged, however, and of no value for identification purposes. Officer Lyons testified that the lack of usable prints on the exterior of the gun could have been the result of the rough material on the plastic grip of the gun, of multiple people handling the gun, of rubbing the gun against clothing while pulling it from a waistband, or of the weapon having been left undisturbed for a period of time while exposed to the elements. Officer Lyons agreed with defense counsel that generally "if somebody sweats more, there's more likely to be a fingerprint." However, he opined that this would not necessarily result in an increased ability to find prints on the grip of the recovered handgun given the rough surface of the grip.

The prosecutor read into evidence the parties' stipulation that "as of August 3, 2011, defendant, Renaldo Lucas had a prior conviction for a crime punishable by imprisonment for a term exceeding one year." This stipulation was relevant to the charged offense of unlawful possession of a firearm by a felon because it established one of the elements of the offense: that appellant had a prior felony conviction.

In closing, the government presented its theory that appellant ran when Officer Parker approached the car because "he had the gun that he knew he had no business having and that he threw it right in front of that officer and [the gun] was found right there on the ground where he had thrown it, where he was caught moments later." The defense countered that the reason appellant ran was that he had been drinking that night and threw away his beer bottle as the officer chased after him. Defense counsel argued that it should trouble the jury that according to the government's theory "this gun was found at a time when someone was nervously running from a car in August, ample reason to believe . . . . someone might sweat" and yet appellant's fingerprints were not found on the weapon. Defense counsel urged the jury to find that the government's evidence linking appellant to the gun found by the fence was weak—only Office Parker's uncorroborated testimony—and reminded jurors that they were required to presume appellant innocent unless the evidence established appellant's guilt beyond a reasonable doubt.

> That's especially important in this case because when this case started, we told you. We told you during jury selection just be aware as part of this case you need to know that at some point in the past [appellant] was convicted of a crime and you promised us that that would not color your perception. That knowing all that, you could still sit here and presume him innocent and give him all the benefits of a fair trial and we are counting on

you to do that. Only if the Government proves its case can that change.

In rebuttal, the prosecutor responded to defense counsel's arguments about the absence of fingerprints and the unreliability of Officer Parker's observations. The prosecutor also made specific reference to appellant's prior conviction:

> You've got him saying I threw a beer [bottle] to try to throw the officers off course before anybody's found what he threw. And of course you have the gun found mere feet away from where Officer Parker found [appellant]. The gun is the reason why he ran. *He had it on his person just like he had that prior conviction on his record.*

(emphasis added). Appellant's counsel immediately objected but was overruled in open court.

After closing arguments, the trial court gave final instructions to the jury. No instruction was given on the proper, limited use of the stipulation that appellant had a prior conviction. At the close of instructions, the court inquired whether there were any objections. None was raised.

The jury began deliberations after lunch and was dismissed for the day at 4:30 p.m. After the jury was dismissed, defense counsel returned to the issue of the government's rebuttal comment about appellant's prior conviction, stating

> There's one issue I wanted to discuss briefly if we could. I objected during [the prosecutor's] closing to the comment that was made[, "H]e had that gun just like he had that prior conviction.["] The Court overruled that objection, rather than make a bigger spectacle out of it and approach the bench, I accepted the Court's ruling but I do think that it warranted then a curative instruction, perhaps even a mistrial, Your Honor[,] but to reference it in that way sounded very much like a propensity argument. He had that gun just like he had that prior conviction.

The trial court responded:

> If you think it warranted an instruction, then you were certainly obligated to say so. I mean, I'm not going to disagree with you that it probably wasn't a wise comment. On the other hand, it is an element for them, they have to show he has the prior conviction and he has the gun and it was a simple statement over the course of close to an hour of closing. It was one sentence and he had that conviction just like he had the gun.
>
> I don't see where it's in any way propensity. It's something they have to prove. It's—I don't see where there's the slightest prejudice from it. So I'll deny whatever it is you're asking for now. Perhaps a mistrial, then perhaps I'm denying it.

The following day, after deliberating during the morning, the jury found appellant guilty of the four weapons offenses.

## II.

Appellant contends that the prosecutor's comment in closing—"He had that gun just like he had that prior conviction"—was improper propensity argument and that the court erred in not recognizing it as such when defense counsel objected and not granting what appellant terms counsel's later request for a mistrial or curative instruction. "In considering claims of improper argument, 'it is our function to review the record for legal error or abuse of discretion by the trial judge, not by counsel.'" *Robinson v. United States*, 50 A.3d 508, 530 (D.C. 2012), *cert. denied*, 133 S. Ct. 2404 (2013) (quoting *Gilliam v. United States*, 46 A.3d 360, 366 (D.C. 2012)). The regulation of closing arguments is committed to the discretion of the trial judge, as are decisions of how to deal with improper comments. *See Turner v. United States*, 26 A.3d 738, 742 n.7 (D.C. 2011); *Finch v. United States*, 867 A.2d 222, 225 (D.C. 2005). That discretion is not unfettered, however, and "must be exercised in accordance with correct legal principles." *Turner*, 26 A.3d at 742 n.7. A court's exercise of discretion will necessarily turn on its determination whether an argument is improper. Thus, we must first determine whether the court correctly concluded, as a legal matter, *see id.* at 742,

and *McGrier v. United States*, 597 A.2d 36, 41 (D.C. 1991), that the prosecutor's challenged comment, even if "[un]wise," was not "in any way [a] propensity" argument. For the reasons that follow, we disagree with the trial court's assessment that there was no impropriety in the prosecutor's comment.

It is a long-standing rule in this jurisdiction that evidence of prior convictions may not be introduced to prove, nor argument made to suggest, that a defendant is guilty of the crime charged because he has a propensity to commit criminal acts. *See, e.g.*, *Drew v. United States*, 331 F.2d 85, 89 (D.C. Cir. 1964); *see also Fields v. United States*, 396 A.2d 522, 527 (D.C. 1978). Because of the risk that jurors will make an inference of criminal propensity from prior criminal activity, evidence of a prior conviction is presumptively prejudicial and contrary to the presumption of innocence. *See Drew*, 331 F.2d at 89-90. On the other hand, evidence of prior convictions may be introduced and there is "nothing inherently improper in the mere mention of a defendant's prior convictions in a prosecutor's closing argument" provided there is an appropriate basis for it outside of proving criminal propensity. *(Amos) Jones v. United States*, 579 A.2d 250, 254 (D.C. 1990). Thus, when a prosecutor's comment is challenged as a propensity argument, the court must consider "whether the prosecutor's reference to a defendant's previous conviction is such that, under the circumstances, reasonable

jurors would naturally and necessarily regard the manner in which the [conviction is mentioned] as implying that the defendant is guilty of the crime charged because he was guilty of past crimes." *Dorman v. United States*, 491 A.2d 455, 460 (D.C. 1985) (en banc).[7] This is an objective analysis of the "impact upon the jury of the prosecutor's manner of [using the] prior conviction rather than the motive or intent of the prosecutor."[8] *Id.* at 461. The court focuses on the "manner" that prior convictions are used because evidence of previous convictions will always be prejudicial to the defendant to some degree, regardless of their admissibility for a legitimate purpose. *Id.* at 460.

We do not automatically ascribe the most damaging interpretation to a comment, viewed in isolation. Rather, we look at the comment in context and will

---

[7] While the issue presented in *Dorman* involved statements made by a prosecutor in cross-examining a defendant, the court specifically noted that similar considerations apply to comments made in closing argument. 491 A.2d at 460 n.5. We have fully adopted the same test for statements made in the context of closing argument. *See Ford v. United States*, 487 A.2d 580, 591 (D.C. 1984) (citing *Fields*, 396 A.2d at 527).

[8] Whether a comment was made in good faith is not relevant in determining if a statement was improper *vel non*. *See Anthony v. United States*, 935 A.2d 275, 286 (D.C. 2007) ("[W]e have no hesitation in concluding that the prosecutor's transgression, though presumably unintentional, was serious in nature, and that an appropriate judicial response was called for.") (internal quotations omitted); *Gaither v. United States*, 413 F.2d 1061, 1079 (D.C. Cir. 1969) ("We have found error in prosecutorial misstatements even where, as here, they were apparently made in good faith.").

conclude it was improper if it would reasonably be understood by the jury as an "invitation" to infer that the defendant was guilty of the crime charged because he was guilty of a previous crime. *Dyson v. United States*, 450 A.2d 432, 441 (D.C. 1982); *Ford*, 487 A.2d at 591 (stating that a prosecutor is prohibited from "suggesting in closing argument that the jury should infer criminal disposition from the evidence of prior crimes"). Particularly relevant here is the juxtaposition of the comment about appellant's prior conviction with the only material fact that was disputed at trial: whether appellant possessed the gun that the officers found on the other side of the fence.

We have cautioned that a jury is more likely to view a comment about a prior conviction as an invitation to infer criminal propensity if the comment is closely sequenced after or juxtaposed against a general denial or key elements of the charged offense that the defendant denies. *See Dorman*, 491 A.2d at 459; *Fields*, 396 A.2d at 527-28. Whether appellant possessed the gun the officers found was the only element that was in dispute in any of the four charged offenses.[9] Appellant denied that he had thrown a gun, and argued that what he had

---

[9] In addition to stipulating that appellant had a prior conviction, the parties stipulated that he did not have a license to carry a pistol in the District of Columbia and that he did not hold a registration for any firearm in the District. Thus, each of
(continued . . .)

thrown was a beer bottle. In rebuttal, the prosecutor was addressing appellant's denial of this key element when he mentioned appellant's prior conviction in the same sentence. However, appellant's prior conviction was of no legal relevance to whether appellant possessed the gun. The prosecutor's comment, moreover, made no distinction between possession of the gun as an element common to all the charged offenses, and the existing prior conviction, which was a separate and distinct element of only one of the offenses.[10] Nor did the prosecutor explain why he mentioned the prior conviction—even after defense counsel objected. *Cf. Ford*, 487 A.2d at 591 (concluding comments were not improper in part because "the prosecutor correctly told the jurors that they could consider [the defendant's] prior convictions 'in determining whether the man is telling the truth' but not to infer that 'because he did those things, he did these'"). To the contrary, the prosecutor equated the two, saying that appellant possessed the gun "just like" he had the prior conviction. The jury could reasonably have perceived the prosecutor's comment

---

(. . . continued)
the four charged offenses turned on a sole disputed fact: whether appellant possessed the gun and, with it, the ammunition found in the gun's magazine.

[10] The jury instructions correctly listed the elements of the various offenses. However, as we discuss in the text, it is the manner in which the prosecutor's argument tied appellant's prior conviction together with the question of appellant's possession of the gun that could reasonably be perceived by the jury as a propensity argument.

as "implying that the defendant is guilty of the crime charged because he was guilty of past crimes." *Dorman*, 491 A.2d at 460; *see (Adrian) Williams v. United States*, 549 A.2d 328, 333-34 (D.C. 1988); *Dyson*, 450 A.2d at 441.[11]

The government argues on appeal that although the "intended import" of the prosecutor's comment about the prior conviction in rebuttal is ambiguous, it appears to have been made "in response to appellant's argument that there was inadequate proof of possession," to argue "that there was just as much proof of appellant's possession (via the trial evidence) as there was of his prior conviction (via the stipulation)." Thus, the government contends, "nothing about the comment suggested to the jury that appellant's prior conviction made him the type of person who would likely carry a gun." We are not persuaded that this would be the natural interpretation of the comment from the perspective of a jury hearing the remark within the evidentiary context of this trial. The jury was informed that the parties had agreed by stipulation to the fact that appellant had a prior conviction. Indeed, the trial court instructed the jury that the stipulated prior conviction was

---

[11] The government attempts to distinguish *Dyson* on the ground that the prosecutor in *Dyson* made a "conscious attempt to lead the jury into considering" criminal propensity. 450 A.2d at 441. However, as discussed *supra*, the intention of the prosecutor is irrelevant in our initial determination of the propriety of comments. In this regard, a comment may be objectively improper without necessarily implying prosecutorial misconduct.

"undisputed evidence in the case." No similar agreement was made by the parties about the possession of the gun; to the contrary, it was the only issue the jury had to resolve and it was vigorously disputed. In this evidentiary context, a reasonable juror could naturally interpret the comment as implying a propensity relationship between the two facts—appellant's prior conviction and his possession of the gun—mentioned by the prosecutor in tandem. [12]

To be clear, the government was entitled to remind the jury of the stipulation concerning appellant's prior conviction in summation as evidence of an element the government had the burden to prove with respect to one of the charged offenses. *See (Johnny) Williams v. United States*, 75 A.3d 217, 222 (D.C. 2013). However, the prosecutor was required to do so in a manner that would not be reasonably understood by the jury as an invitation to convict based on a perception

---

[12] The government cites *Pérez v. United States*, 968 A.2d 39, 80 (D.C. 2009), for the proposition that we should assign the more benign meaning to the prosecutor's comment and conclude it was not improper. But *Pérez* is not controlling on the question of the propriety of the comment as the government had conceded that the prosecutor's comments were improper. *See id.* at 79. The only question we addressed in *Pérez* was whether the improper remarks were unduly prejudicial. *See id.* at 79-80. This is an issue to which we will return, but one that we do not yet address. At this stage, we are concerned solely with determining whether the remark was improper, and we "look to the jury's reasonable perception, using an objective" test; we do not consider the intentions of the prosecutor. *Dorman*, 491 A.2d at 460, 461.

of appellant's propensity to commit crime. *See Turner*, 26 A.3d at 744 (concluding comments were improper, regardless of the prosecutor's subjective intentions, because "[i]t is incumbent upon the prosecutor to take care to ensure that statements in opening and closing arguments" are proper). Defense counsel's objection "was well founded and should have been sustained." *(Adrian) Williams*, 549 A.2d at 334.

## III.

Having concluded that defense counsel's objection to the prosecutor's comment had merit and should not have been overruled, we must address whether the comment resulted in reversible prejudice. *See Robinson*, 50 A.3d at 530-31. Because there is a high likelihood that a jury will make an improper inference of propensity from evidence of prior convictions, we presume prejudice. *See, e.g.*, *Eady v. United States*, 44 A.3d 257, 265 (D.C. 2012); *Johnson v. United States*, 683 A.2d 1087, 1092 (D.C. 1996) (en banc); *Drew*, 331 F.2d at 89-90. However, we will reverse only if appellant was "substantial[ly] prejudice[d]." *Turner*, 26 A.3d at 742. As the claim of error was preserved at trial, we review under the harmless error standard under which the government bears the burden of showing that the verdict was not substantially swayed by the comment such that this court can say, with fair assurance, that the conviction is deserving of judicial confidence

and should be affirmed. *See (Damion) Jones*, 17 A.3d 628, 634 (D.C. 2011); *Wheeler v. United States*, 930 A.2d 232, 246 (D.C. 2007); *see also Kotteakos v. United States*, 328 U.S. 750, 765 (1946) ("But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.").

In making that determination we look at:  (1) the "gravity" of the improper comment, (2) its relationship to the issue of guilt, (3) "the effect of any corrective action by the trial judge," and (4) the strength of the government's case.  *Turner*, 26 A.3d at 742.

## A. Gravity of Comment

Where a prosecutor repeatedly emphasizes an improper argument, the gravity of the impropriety is heightened.  *See Turner*, 26 A.3d at 744.  Conversely, there is less gravity in a passing, brief reference.  *See Finch*, 867 A.2d at 228.  As the trial court observed, the single comment of the prosecutor here was not repeated, and it referred to a conviction of which the jury had already been made aware.  These factors tend to lessen the gravity of the impropriety.  On the other

hand, "[i]mproper prosecutorial comments are looked upon with special disfavor when they appear in the rebuttal because at that point defense counsel has no opportunity to contest or clarify what the prosecutor has said." *Anthony*, 935 A.2d at 284 (quoting *(David) Lee*, 668 A.2d 822, 830 (D.C. 1995)); *cf. Pérez*, 968 A.2d at 80 (noting that improper comment was made in opening statement and not repeated, which mitigated any prejudice). Thus, even though we cannot say the comment was without prejudicial import, we likewise cannot say the comment was particularly grievous.[13]

## B. Relationship to Issue of Guilt

The central question of fact at trial, and the only disputed issue, was whether appellant possessed the handgun and then tried to discard it as he was being chased by the officers. Appellant's prior conviction was relevant solely to one element of the felon-in-possession charge.[14] The prosecutor's comment tying the prior

---

[13] It is in connection with assessing the gravity of the comment that the prosecutor's intention may become relevant. The government argues it is ambiguous, and the record does not reveal whether the prosecutor's comment during rebuttal in this case was intended as a propensity argument. *See (David) Lee*, 668 A.2d at 831; *Pérez*, 968 A.2d at 80.

[14] The government does not argue that the prior conviction was legally relevant for any other purpose.

conviction to proof of whether appellant possessed the gun, however, could be understood as implying his guilt on all four charged offenses. *See Anthony*, 935 A.2d at 285 (noting that prosecutor's misrepresentation of evidence in closing argument went "to the very heart of the case").

We have observed, however, that the risk of prejudice is at its height if the prior conviction was for an offense similar to the one charged at trial. *See, e.g.*, *Fields*, 396 A.2d at 527; *cf. Finch*, 867 A.2d at 228-29 (noting that because prior convictions were non-violent drug and theft offenses, the prosecutor's comment did not suggest appellant had a propensity to commit the charged crimes for armed assault). In this case, the nature of appellant's previous conviction was not disclosed to the jury.[15] On balance, the manner in which the parties agreed to stipulate to the prior conviction in a summary manner was calculated to lessen prejudice to appellant. *Cf. Goodall v. United States*, 686 A.2d 178, 183 (D.C. 1996) (discussing the use of stipulations to reduce prejudicial effect).

## C. Strength of Government's Case

---

[15] There could be concern that the jury might speculate as to the nature of a prior conviction, but if that is a worry, defense counsel could ask that the nature of the prior offense (in this case, apparently for drugs) be disclosed to the jury.

While the government's evidence in this case was "'sufficient' to convict appellant, it was not overwhelming." *Eady*, 44 A.3d at 268. In *Eady*, a recent case in which we reversed under plain error review after evidence of a prior conviction was erroneously admitted and repeatedly emphasized,[16] we noted that the government's case hung on the testimony of a single government witness who claimed to have seen the defendant with a weapon. *See id.*; *see also (David) Lee*, 668 A.2d at 832. Similarly in this case, the government's case against appellant turned on the testimony of a single witness. Officer Parker testified that appellant removed an object from his waist and threw it; he then saw and heard a silver object hit a fence with a "bang" of two metals, not the sound of a bottle. But Officer Parker's testimony did not stand alone because it was corroborated by two other pieces of evidence. A silver and black gun was found on the other side of the fence, and both parties noted in their respective closing arguments that photographs taken of the gun at the scene depicted a clean gun, from which the

---

[16] *Eady* reviewed for plain error, but its analysis is still instructive because the "substantial prejudice" prong of harmless error review is somewhat akin to the determination of whether an obvious error affected the appellant's "substantial rights." *Wheeler*, 930 A.2d at 246 (citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81-82 (2004)).

jury could infer that it had been lying on the ground for only a short time.[17]  In addition, appellant leapt out of the car and began to flee when the officer approached the car.  As he did so, he held his waist area, an action which the officer knew from experience was consistent with "hav[ing] a weapon in your waistline or on your waist area."  On the other hand, there also was evidence supporting the defense's argument that what appellant threw away was a beer bottle:  no one actually saw appellant with the handgun at any point; the officers testified that guns are common in the area of Ridge Road where appellant was seized; appellant told the arresting officer on the scene that he threw away a beer bottle; and the area where the gun was found was littered with debris, including at least one beer bottle.[18]

We reiterate that our inquiry here is not whether the evidence was sufficient to sustain appellant's conviction; it clearly was.  Our purpose is to determine the prejudicial effect of the improper comment on appellant's trial viewed as a whole.  That the government's evidence, while strong, was not overwhelming adds weight

---

[17]  Officer Kimball, who found the gun, never testified to its condition upon discovery.

[18] On cross examination Officer Parker identified a number of glass bottles from photographs taken at the scene.  One was identified by a type of beverage or brand—a bottle that had a color similar to that of a Heineken beer bottle.  There was no testimony offered that the other bottles were or were not also beer bottles.

to the potentially prejudicial effect of the comment. *Compare, e.g.*, *Dorman*, 491 A.2d at 464 (finding improper comments harmless where there was overwhelming evidence of guilt), *with Anthony*, 935 A.2d at 285 (finding improper comments caused substantial prejudice in part because the government's evidence was "problematic" and "not especially compelling"). But, unlike in *Eady*, where the improper references to prior convictions were repeated throughout the trial—by both the prosecutor and the judge—in this case only the prosecutor made the improper comment, and it was not repeated. The thrust of the prosecutor's closing argument was directed to the evidence presented at trial and properly before the jury for consideration: highlighting the government's evidence that supported that appellant had the gun and responding to the defense's arguments pointing to weaknesses in the government's case.

### C. Corrective Actions

In appellant's trial the jury never received instruction on the proper use of prior-conviction evidence. This court has made clear that "a trial court is ordinarily required to give a strong, unambiguous instruction on the use of prior convictions in its final charge to the jury." *Fields*, 396 A.2d at 526; *see Dyson*, 450 A.2d at 441 ("In consideration of the potential prejudice to a defendant from

misuse of evidence of prior criminal acts, we have required that care be taken to insure that the jury is instructed concerning the limits upon the use of such evidence.").[19]  In this case the trial court had been alerted to the defense's concern that admission of the prior conviction would be prejudicial on the disputed issue of possession.[20]  Once an improper comment has been made, the use of timely limiting and curative instructions can be an important consideration in determining "whether a less blatant error was harmless."  *Dorman*, 491 A.2d at 462 (noting that the trial court properly instructed the jury three times).  In cases where comments

---

[19] This well-established rule is embodied in a Standardized Criminal Jury Instruction, which provides that the jury should first be instructed on the proper use of prior convictions, before being specifically cautioned:

> You may not use this evidence for any other purpose.  [Name of defendant] is only on trial for the crimes charged.  The defendant is not charged in this case with any offense relating to [describe the other crimes conduct], and you may not use this evidence to conclude that [name of defendant] has a bad character, or that [name of defendant] has a criminal propensity.  The law does not allow you to convict a defendant simply because you believe he may have done bad things not specifically charged as crimes in this case.

Criminal Jury Instructions for the District of Columbia, No. 2.321 (5th ed. 2013).

[20] Defense counsel had requested that the court bifurcate the felon in possession charge from the trial of the other three gun possession charges.  The request was denied on the ground that because the prior conviction was stipulated to by the parties, it would merit little mention and "nobody is going to argue that it means anything."

are particularly prejudicial, however, even a curative instruction may not be relied upon to overcome the prejudice. *See, e.g., Turner*, 26 A.3d at 744; *Dyson*, 450 A.2d at 442; *Bailey v. United States*, 447 A.2d 779, 783 (D.C. 1982). The government cites no case affirming a conviction obtained in a trial where there was improper comment about a prior conviction and no instruction was given. Thus, in this case the lack of a limiting or curative instruction concerning the use of a prior conviction gives us significant pause.

**IV.**

"We cannot, and do not, take . . . prosecutorial misstatements lightly. In the final analysis, however, we must determine whether a single lapse on the prosecutor's part, assessed in the context of the entire trial, warrants reversal of [appellant's] convictions." *(David) Lee*, 668 A.2d at 833. We consider, first, that in this case, notwithstanding the lack of trial instructions concerning the proper use of appellant's prior conviction, the jury was not totally without any bearings on the issue. Jurors had been made aware from the very beginning that appellant had been convicted of an unrelated crime in the past and they had been admonished not

to use that against him.[21]  At the end of the government's case the jury was read the

one-sentence stipulation that appellant had a prior conviction.  In the defense's

closing argument, counsel referred to appellant's prior conviction and stressed to

the jury that they had

> promised us that would not color your perception.  That knowing all that, you could still sit here and presume him innocent and give him all the benefits of a fair trial and we are counting on you to do that.  Only if the government proves its case can that change.

Furthermore, we can draw some inferences about the potential for prejudice

from the actions (and inaction) of counsel whose overall performance we have no

cause to question.[22]  Defense counsel did not mention the absence of a limiting

instruction concerning the prior conviction when the judge listed the instructions

---

[21] During *voir dire* prospective jurors were informed that appellant had been "convicted of an unrelated crime in the past" and that "[t]his doesn't change the fact that in the eyes of the law [appellant] is presumed innocent of this charge unless and until he can be proven guilty beyond a reasonable doubt."  Jurors were then asked, "Now, knowing [appellant] has a prior conviction, do any of you think you would have a hard time presuming him innocent?"  The record supports that the *voir dire* statement was taken to heart by prospective jurors.  Four potential jurors replied affirmatively; after being questioned at the bench, all four were excused.  Pretrial *voir dire*, however, is no substitute for proper jury instructions at trial.

[22] Appellant was represented at trial, as he is on appeal, by the District of Columbia Public Defender Service.

that would be read; counsel told the court he had "no changes" to propose in the instructions. Counsel remained silent when, after instructing the jury, the trial court inquired whether there were any objections to the instructions. Counsel raised the issue of a curative instruction to address the prosecutor's rebuttal comment, but did so only after the jury had deliberated for a full afternoon. Counsel's failure to request a limiting instruction—either at the time that the stipulation was read to the jury, or with the final jury instructions—may reflect counsel's impression that in the context of the trial appellant's prior conviction was not foremost on the jury's mind. With respect to improper prosecutorial comment, we have affirmed "where, as a matter of strategy, defense counsel may decide that it is more effective simply to let a potentially prejudicial remark pass, rather than draw[] attention to it further by requesting a curative instruction." *Clark v. United States*, 639 A.2d 76, 80 (D.C. 1993). Indeed, that was the reason defense counsel gave in this case for not immediately requesting a curative instruction when the prosecutor mentioned the prior conviction in rebuttal.[23] Defense counsel

---

[23] Counsel explained that "rather than make a bigger spectacle out of it and approach the bench, I accepted the court's ruling."

subsequently had a change of heart, but by that point the jury was already in the midst of deliberation.[24]

As the trial court noted, the prosecutor's comment was a single, brief, non-emphasized statement in the midst of around an hour of closing argument. We are satisfied that the comment, viewed in the context of the trial as a whole, was not so impactful on the jury as to substantially shift the grounds of their deliberations and eventual verdict. Having assessed the impropriety of the comment, its centrality to the issue of guilt, the absence of corrective action by the trial court, defense counsel's admonition in his own closing argument recalling the trial judge's

---

[24] Although we consider actions of counsel in evaluating the likelihood of prejudice, we emphasize that counsel's mere failure to request a limiting instruction does not necessarily relieve the trial court of the responsibility to properly instruct the jury. *See Coleman v. United States*, 779 A.2d 303, 304-06 (D.C. 2001) (noting that instruction warning the jury on the proper use of prior-conviction evidence may be required immediately after the evidence is introduced, either on request of counsel or *sua sponte*); *see also Finch*, 867 A.2d at 225 n.1 ("Such an error or abuse may, to be sure, embrace not only incorrect rulings, but also, on occasion, failure to intervene *sua sponte* when such intervention is called for, . . . or to react with sufficient promptness and vigor to prosecutorial misdeeds. . . ." (quoting *Irick v. United States*, 565 A.2d 26, 33 (D.C. 1989))); *cf. Clark*, 639 A.2d at 80 (affirming where defense counsel refused court's offer to give curative instruction). Even after the jury had begun to deliberate, had the trial court perceived the comment as prejudicial, it would have been able to reinstruct the jury at that point. *See Blaine v. United States*, 18 A.3d 766, 774 (D.C. 2011) (noting that "[d]ecisions regarding reinstruction of a jury are committed to the discretion of the trial court" (quoting *Davis v. United States*, 510 A.2d 1051, 1052 (D.C. 1986))).

instructions during *voir dire*, the strength of the government's case, and counsel's decision not to request any instruction before the jury began deliberating, we conclude that while we presume prejudice, the prejudicial effect in this case was not substantial. *Turner*, 26 A.3d at 742. Therefore, we are satisfied the government has met its burden of demonstrating that the prosecutor's comment did not substantially sway the jury and we therefore have sufficient confidence in the verdict as to affirm appellant's conviction. *See Kotteakos*, 328 U.S. at 765.[25]

*So ordered.*

---

[25] Because we find the prosecutor's comment and the trial court's instructional error to be harmless, it follows that the trial court's denial of appellant's motion for a mistrial was not an abuse of discretion. *See Goins v. United States*, 617 A.2d 956, 958 (D.C. 1992) ("Whether to declare a mistrial is within the sound discretion of the trial court, and its decision in that regard will not be disturbed except 'in extreme situations threatening a miscarriage of justice.'" (*quoting Beale v. United States*, 465 A.2d 796, 799 (D.C. 1983))). In evaluating whether a motion for a mistrial based on alleged prosecutorial misconduct in a criminal case was denied in error, this court looks to four factors substantively similar to those elucidated in *Turner*, "all the while giving due deference to the decision of the trial judge, who had the advantage of being present not only when the alleged misconduct occurred, but throughout the trial." *(Charles) Lee v. United States*, 562 A.2d 1202, 1204 (D.C. 1989).